298 So.2d 210 (1974)
William MARKHAM, As Tax Assessor of Broward County, and Individually, Appellant,
v.
STATE of Florida, by and through the Department of Revenue, Appellee.
No. T-317.
District Court of Appeal of Florida, First District.
August 1, 1974.
*211 M. Stephen Turner of Thompson, Wadsworth & Messer, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen.; Winifred L. Wentworth and Stephen E. Mitchell, Asst. Attys. Gen., for appellee.
BOYER, Judge.
The plaintiff in the lower court appeals the final judgment entered in the Circuit Court of Leon County dismissing plaintiff's amended complaint with prejudice upon defendant's motion for judgment on the pleadings.
The essential facts are not in dispute. Following the November 1968 election, plaintiff's political opponent challenged the action of the Broward County Canvassing Board in canvassing and counting 602 absentee ballots which enabled the plaintiff to be certified as the winner in the election. Had the contested absentee ballots been rejected by the Canvassing Board the plaintiff's opponent would have prevailed in the election. Suit was commenced against the Canvassing Board and the Plaintiff in which the plaintiff sub judice was named as a party defendant in his individual capacity and not as Tax Assessor of Broward County, the office to which he had been elected by virtue of the contested absentee ballots. A motion for temporary injunction in that suit was sucessfully resisted by plaintiff sub judice and he assumed the duties of the office of Tax Assessor, compensating his attorneys with his own funds.
The election contest continued, however, challenging the validity of the right of the plaintiff sub judice to hold office as tax assessor. New counsel was retained and in due course, after an interlocutory appeal and subsequent trial, the propriety of canvassing the contested absentee ballots was established, vindicating plaintiff's right to remain in office. The new counsel, retained by the plaintiff sub judice after assuming the duties of office, submitted a statement for fees in the amount of $3,430.85, the reasonableness and propriety of which is not questioned. The appellant here, plaintiff below, desired to pay said fees from funds budgeted in his office account for legal expenses; however, as a matter of routine precaution, he sought advice from the Attorney General on the propriety of such expenditures. The Attorney General ruled that no public purpose was involved whereupon suit for declaratory judgment was instituted by the plaintiff, in his capacity as Tax Assessor of Broward County, seeking a declaration that his office was lawfully entitled to expend the sum of $3,430.85 for attorney's fees incurred in successfully defending the above mentioned law suit. The Circuit Judge held that the public interest was not sufficiently involved to justify the expenditure of public funds for such purpose.
We affirm.
It is a fundamental concept of the law in Florida and elsewhere that public funds may not be expended for other than public purposes. Public officers are, of course, entitled to a defense at the expense of the public in a law suit arising from the performance of the officer's official duties and while serving a public purpose. Duplig v. City of South Daytona, Fla.App. (1st) 1967, 195 So.2d 581.
*212 The fact that the appellant admittedly has sufficient funds available in his office budget to cover the subject attorney's fees is not controlling. The suit giving rise to the incurring of the attorney's fees was not against the appellant in his official capacity nor did it arise from a discharge of his official duties nor serve a public purpose. The suit was a pure and simple election contest relating to the validity of certain absentee votes. The questioned absentee votes were sufficient in number to affect the result of the election. Under the law of Florida as announced in cases too numerous to cite, had the contestant been successful in his attack upon the votes the appellant would have ceased to be tax assessor and his opponent would have taken office. The office, functions and duties of tax assessor would not have been in any manner altered. There would simply have been another man filling the position. The legal battle between the political contestants in the election contest was purely personal. Each wanted to be tax assessor of Broward County and the challenged absentee votes furnished the key to the door. This is the characteristic which distinguishes the case sub judice from those relied upon by the appellant in this appeal.
This case is controlled by the landmark case of the Supreme Court of Florida, Peck v. Spencer, 26 Fla. 23, 7 So. 642 (1890) wherein a tax payer sought a declaration that the Town Council was without authority to authorize the acting mayor to employ counsel to defend at the town's expense a suit which had been filed against the acting mayor by a defeated candidate to test the legality of the town election. There the Supreme Court said:
"* * * And now, admitting the right of corporations to sue and to defend suits, and to protect their officers in the lawful discharge of their duties, to be correct, still, where did the town council of Daytona derive their powers to appropriate money in the defense of contested elections in the result of which the corporation had no pecuniary interest whatever? Such power is not given in its charter, either expressly or by reasonable implication. These contests are personal, and the corporation can have no interest in the result, and an appropriation to pay any one of the parties the expenses he may be put to is without legal authority.
"An ordinance making an appropriation of the funds of a town or city, derived from taxation, for purposes wholly beyond the purview of municipal grant, is a wrongful appropriation of the funds held in trust for the tax-payers and people to pay the alimony and legitimate expenses of the town or city, and is, in short, ultra vires, null and void. * * *" (Underlining added; 7 So. at page 644)
In Williams v. City of Miami, Sup.Ct. Fla. 1949, 42 So.2d 582, a supersedeas bond was given by the affected commissioner to stay a court-ordered recall election. Judgment on the bond was eventually obtained and the commissioner sued the City of Miami for a decree of subrogation on the theory that the bond was the obligation of the city. In that case the Supreme Court said:
"* * * It is our view and conclusion that the supersedeas bond was not the obligation of the City of Miami. It was not interested in the result of the recall election, but such interest was personal to and the law required that the costs should be paid by appellant and not by the taxpayers of the City of Miami. * * *" (Underlining added; 42 So.2d at page 582)
Appellant relies on City of North Miami Beach v. Estes, Fla.App. (3rd) 1968, 214 So.2d 644, writ of certiorari discharged in the Supreme Court in Estes v. City of North Miami Beach, Sup.Ct.Fla. 1969, 227 So.2d 33. There, a losing candidate for councilman in a municipal election filed a suit in circuit court against four of the seven members of the city council who were successful in said election. Plaintiff in that suit charged election law violations *213 and sought certain relief, including a finding by the court that the defendants held office contrary to law, an order that they vacate their respective offices and an order enjoining them from performing any of their official duties other than legislative actions. The facts recited in the opinions do not reflect that the suit was merely an election contest whereby one of the parties would ultimately assume the contested office. After the suit was filed the entire city council adopted an ordinance setting forth in its preamble that in the opinion of the city council the suit presented an emergency situation requiring the protection of the public welfare and it was upon this premise that the city council acted in allocating the funds to provide special council for the four members of the city council and the city attorney being sued. Although the councilmen were designated as defendants in their individual names the court specifically found and concluded that the action was in fact directed at them in their official capacities. In the Estes cases both the District Court of Appeal and the Supreme Court recognized the holding in Peck v. Spencer, supra, but found that the facts of that case were clearly distinguishable from the facts in the Estes case. We agree, and it is for that reason that the Peck case is here controlling rather than the Estes case.
The District Court of Appeal, in the Estes case, said:
"Finally, we note here that an appellate court must be first shown a clear abuse of discretion when it is asked to rule adversely to an ordinance enacted for the regulation of government. See 23 Fla. Jur. Municipal Corporations § 104; 6 McQuillan, Municipal Corporations 3rd Ed., §§ 20-47. The rationale underlying this rule of construction is that the municipalities themselves, being closer and more intimately related to the affairs which they seek to govern, are in the best position to enact proper municipal legislation. Therefore, the courts are cautioned to favor the construction which renders an ordinance legal. City of Miami v. Kayfetz, Fla. 1957, 92 So.2d 798." (214 So.2d at page 647.)
The Supreme Court, in the Estes case, said:
"* * * Being concerned about the chaotic condition which might ensue and being confronted with the effect of such an injunction on the public welfare and property of the municipality, it was not an abuse of discretion for the city council to determine that the city had an interest which would be affected by the outcome of the proceedings. This case falls within the reasoning of Miller v. Carbonelli, supra, and Duplig v. City of South Daytona, supra. * * *" (227 So.2d at page 35)
Miller v. Carbonelli, Sup.Ct.Fla. 1955, 80 So.2d 909, relied upon by the Supreme Court in the Estes case, and there cited, involved the payment of legal fees in defense of a quo warranto action brought by one councilman against the new mayor elected by the council from their own number. The suit challenged the right of the newly elected mayor to assume that office and also the action of the council in electing him. In that case the Court said:
"In this quarrel within the councilmanic family the issue not only immediately and directly affected the proper governance and administration of village affairs but the official action of the councilmen as electors was challenged. In this situation the council was thoroughly justified in expending public funds to insure that the action they had taken in the choice of a mayor was properly defended, and consequently to dispel any doubt about the exercise by [the mayor] of the prerogatives of the office of mayor. * * *" (Emphasis added; 80 So.2d at page 909)
In Duplig v. City of South Daytona, supra, also cited and relied upon by the Supreme *214 Court in Estes, the town council voted to pay the legal expenses for services which were rendered in a defamation suit brought by a former city clerk, who served at the pleasure of the city council, against the mayor. The suit was based upon statements made by the mayor to the council concerning the city clerk. The court found that the city had a pecuniary interest in seeing that the mayor brought to the attention of the council information concerning the conduct of the officials serving at the pleasure of the council, and held it appropriate for the city council to determine that the suit was brought against the mayor in his official capacity. These are not the facts of the case sub judice.
Even though attorney's fees were allowed to be paid from public funds in Estes, Miller and Duplig, the rule proclaimed in the Peck case has in no way been eroded. This is quite apparent by the great lengths to which the courts in those cases went to declare that the fees sought to be paid were incident to the discharge of official duties and for public purposes.
Appellant claims that although the election contest was personal prior to his assuming office, that it thereupon acquired a public purpose. In the Peck case the defendant was acting mayor while he was defending the suit and was thus a public official, but that fact did not make the suit any less personal. In the Williams case the defendant was a city commissioner when the bond was undertaken, but again that fact did not make the obligation any less personal.
Appellant further claims that since the election contest only involved the propriety of the canvassing board counting certain questioned absentee votes, in the absence of any allegations of personal wrongdoings, the suit was public rather than personal. Again, there is no indication in the Peck case of any personal wrongdoing on the part of the successful candidate, yet the suit was still held to be personal. The public does indeed have an interest in the activities of the canvassing board, but its interest goes only to the demand that the properly elected candidate hold office, not that any particular person hold the office.
In conclusion, we hold that an election contest between opposing candidates for an office, arising out of a challenge directed to specific votes sufficient in number to change the result of the election, is personal between the candidates and litigants and is not an official duty of the candidate holding the office and serves no public purpose justifying the expenditure of public funds incident thereto.
McCORD, J., concurs.
SPECTOR, Acting C.J., dissents.
SPECTOR, Acting Chief Judge (dissents):
I respectfully dissent from the majority opinion herein. As I read City of North Miami Beach v. Estes, 214 So.2d 644 (Fla. App. 1968); affirmed 227 So.2d 33 (Fla. 1969), reversal is required. Once an officer's election has been validated by the appropriate canvassing board, litigation seeking his ouster unquestionably poses a threat to effective administration of that officer's duties and, as held in Estes, supra, effective administration of official duties is sufficiently in the public interest to justify the expenditure of public funds for special legal counsel.
I would reverse.