305 So.2d 166 (1974)
STATE of Florida, Appellant,
v.
JACKSONVILLE PORT AUTHORITY, Appellee.
JACKSONVILLE PORT AUTHORITY, Appellant,
v.
State of Florida, Appellee.
Nos. 44820, 45392.
Supreme Court of Florida.
December 18, 1974.
*167 T. Edward Austin, State's Atty., and Dorothy H. Pate, Asst. State's Atty., for the State of Florida, appellant-appellee.
Francis P. Conroy of Marks, Gray, Conroy & Gibbs, Jacksonville, for Jacksonville Port Authority, appellee-appellant.
OVERTON, Justice.
These consolidated appeals are from separate judgments of the Duval County Circuit Court entered in proceedings for the validation of bonds. In each instance, the question before us is whether a specified capital project constitutes an industrial plant within the meaning of Article VII, Section 10(c), Florida Constitution, and Ch. 159, Part II, F.S.A. We have jurisdiction pursuant to Article V, Section 3(b)(2), Florida Constitution, and Section 75.08, F.S.A. (1973).
In separate resolutions of the Jacksonville Port Authority, each of these projects was approved for the issuance of $1 million (principal amount) in Industrial Development Revenue Bonds pursuant to Ch. 159, Part II, Florida Statutes. Separate bond validation proceedings were duly conducted before the Circuit Court of Duval County.
The first proposed capital project is for a food distribution center under construction by Publix Super Markets, Inc., in Jacksonville, Florida. It is to be located in a structure containing approximately 250,000 square feet on a land area of approximately fifty acres. When completed, the facility will be part of a food distribution system for some 180 retail outlets in the state. The circuit court validated the bond issuance for the food distribution center, specifically finding, inter alia, that the project would make a significant contribution to the economic growth of the City of Jacksonville. The court also stated, "... [t]he project will constitute an industrial plant within the meaning of the [Florida Industrial Development Financing] Act and Section 10(c), Article VII of the Constitution of Florida."
*168 The second proposed capital project is a laundry facility in Jacksonville, to be occupied by Dixie Uniform Supply, a division of Neway Uniform and Towel Supply of Florida, Inc., hereinafter referred to as "Neway." The proposed plant will have a working area of 28,000 square feet. The work to be performed in the new facility will include the laundering, servicing, and renovating of industrial working garments. Special cleaning agents, not used in normal commercial laundries, will be needed to remove the petroleum-based soils in the fabrics laundered. Customers will be limited to specified industries and will not include the general public. The present Neway facility employs sixty people and has a current dollar volume business in excess of $1 million. This laundry facility project was disapproved by the trial court, which cited the evidence and record presented as well as the reasoning of the Supreme Court of Missouri in State ex rel. Keystone Laundry and Dry Cleaners, Inc. v. McDonnell, 426 S.W.2d 11, 18 (Mo. 1968). Construing the word "industry" within a state constitutional provision similar to Florida's, the Missouri court said:
"A laundry is purely a service institution. Neither the size nor the cost of the building and equipment nor the number of employees is controlling."
The State has appealed to urge reversal of the trial court's validation of bonds for the Publix food distribution center, while Neway seeks to overturn the trial court's decision refusing to validate the issuance of bonds for the Neway laundry facility project.
The constitutional language governing these cases is contained in Section 10(c) of Article VII, Florida Constitution. It provides that neither the state nor any other governmental unit shall give, lend, or use its taxing power or credit to aid any corporation, association, partnership, or person. It further provides that the restriction shall not prohibit laws authorizing "... revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants... ."
To implement this constitutional language, the legislature enacted Chapter 159, Part II, §§ 159.25 through 159.43, F.S.A.[1] The term "project" is defined by § 159.27(5), F.S.A., in these words:
"`Project' means any capital project comprising an industrial or manufacturing plant, including one or more buildings and other structures, whether or not on the same site or sites; ..." [Emphasis supplied]
The phrase "industrial plant" is not specifically defined within the bond financing provisions of the Florida Constitution or the above-cited implementing provisions of Chapter 159, F.S.A. Yet it seems clear from a reading of Section 159.27(5), F.S.A., that the legislature intended the phrase to be liberally construed. Previous decisions of this Court support this view, as illustrated in State v. Jacksonville Port Authority, 266 So.2d 1 (Fla. 1972), where we approved the trial court's validation and confirmation of a bond issue for the acquisition and construction of a plant to bottle, store, and distribute domestic and foreign wines as well as other spirituous liquors. In State v. County of Dade, 250 So.2d 875 (Fla. 1971), we approved a $3.85 million bond issue to finance the acquisition of a meat processing plant. Our holdings in these earlier cases are entirely consistent with the broad definition of "industry" in common usage. For example, in Webster's New International Dictionary, Unabridged (1961), the word "industry" is defined as:
"3b. A department or branch of a craft, art, business, or manufacture: a division of productive or profit-making labor, esp. one that employs a large personnel and capital, esp. in manufacturing. c. a group of productive or profit-making enterprises or organizations that have a similar technological structure of *169 production and that produce or supply technically substitutable goods, services, or sources of income, [as] the poultry industry... ."
If a beverage bottling plant and a meat processing facility are eligible for funding by means of Industrial Development Revenue Bonds, we see no reason why the food distribution center should not also qualify. The proposed laundry facility we approve somewhat less readily, for it will be involved primarily in the rendering of services as opposed to the processing or distribution of products. It should be noted, however, that this particular facility is not designed to serve the consuming public generally, as would, for example, an ordinary commercial laundry; it will not even maintain a cash register. In conjunction with its other cleaning services, Neway proposes to operate the facility to meet the specialized laundering needs of a variety of industries in the Jacksonville area. While the clientele and the nature of the cleaning services are not alone determinative of whether the proposed project qualifies as an "industrial plant," these are certainly proper factors for consideration along with the size of the plant, the number of employees, etc. In this regard, we disagree with the holding of the Missouri Supreme Court in Keystone Laundry and Dry Cleaners v. McDonnell, supra. Viewing the Neway project as a comprehensive whole, we feel it qualifies.
We hold, therefore, that the above-described food distribution plant and laundry facility are "industrial plants" as contemplated by Article VII, Section 10(c), Florida Constitution, and Ch. 159, Part II, Florida Statutes. Since the projects will contribute to the prosperity of the state[2] and since they meet the other requirements of the Act and the Constitution, they qualify for the issuance of Industrial Development Revenue Bonds by the Jacksonville Port Authority.
The judgment of the trial court in Case No. 44,820 is affirmed; the judgment in Case No. 45,392 is reversed.
ADKINS, C.J., ERVIN, J., and SIEGENDORF, Circuit Judge, concur.
ROBERTS and McCAIN, JJ., dissent.
NOTES
[1] 1969 Florida Laws, Ch. 104, at 473-88.
[2] § 159.26, Fla. Stat.