QUESTION:
May county funds or funds available in the office budget of the supervisor of elections be expended to provide a defense for a supervisor of elections who has been made a party defendant in an election contest in his or her individual capacity as the successful candidate or nominee and where the county canvassing board of which such supervisor is a member is a party defendant as required by s. 102.161, F. S.?
SUMMARY:
Neither county funds nor funds available in the office budget of the supervisor of elections may be expended to defend a supervisor of elections who has been made a party defendant as the successful candidate or nominee in an election contest instituted pursuant to s. 102.161, F. S. Such litigation is personal to the candidates involved and, therefore, the county has no interest in expending funds to defend the supervisor in such proceedings.
According to your letter, you were made a party defendant in an election contest proceeding instituted pursuant to s. 102.161, F. S. That section provides in pertinent part:
 The certification of election or nomination of any person to office may be contested in the circuit court . . . by any unsuccessful candidate for such office . . . . The successful candidate and the canvassing board or election board shall be the proper party defendants. (Emphasis supplied.)
An examination of the complaint filed by the unsuccessful candidate for nomination to the office of supervisor of elections, a copy of which you have attached to your letter, reveals that you were made a party defendant in your individual capacity as the successful candidate for nomination to the office of supervisor of elections and that the county canvassing board was also made a party defendant as required by the terms of s. 102.161, F. S., above quoted. The complaint further reveals that no charges are made against or relief sought from the defendant canvassing board with respect to any act on the part of such board in carrying out its statutorily assigned duties and functions. (See ss. 101.68,102.141, 102.151, and 102.166, F. S., as to the duties and functions of the county canvassing board.) To the contrary, the complaint alleges that the supervisor of elections unlawfully solicited the casting of absentee ballots. Thus, the complaint prays that `the returns from the absentee ballots in said election be rejected' and that the unsuccessful candidate be `declared the rightful winner of said election.'
The foregoing analysis of the allegations contained in the complaint makes clear that the action is simply an election contest predicated upon the validity of certain absentee votes and challenging the right of the successful candidate or nominee to hold the office to which she was elected. The question of whether or not public funds may properly be expended to provide a legal defense for the successful candidate in such an election contest proceeding has been recently considered by the court in Markham v. State By and Through the Department of Revenue, 298 So.2d 210 (1 D.C.A. Fla., 1974). The Markham case involved an election contest challenging the action of the Broward County Canvassing Board in canvassing and counting certain absentee ballots. The unsuccessful candidate for the office of Broward County Tax Assessor sued both the successful candidate in his individual capacity and the county canvassing board. The question under consideration by the court was whether or not the successful candidate for the office of tax assessor could use funds available in his office budget for legal expenses to pay attorneys he had retained to defend him in the election contest. In ruling that such an expenditure would be improper, the court held:
 The suit giving rise to the incurring of the attorney's fees was not against the [tax assessor] in his official capacity nor did it arise from a discharge of his official duties nor serve a public purpose. The suit was a pure and simple election contest relating to the validity of certain absentee votes. The questioned absentee votes were sufficient in number to affect the result of the election. Under the law of Florida as announced in cases too numerous to cite, had the contestant been successful in his attack upon the votes the appellant would have ceased to be tax assessor and his opponent would have taken office. The office, functions and duties of tax assessor would not have been in any manner altered. There would simply have been another man filling the position. The legal battle between the political contestants was purely personal. Each wanted to be tax assessor of Broward County and the challenged absentee votes furnished the key to the door. [298 So.2d at 212.]
Accord: Peck v. Spencer, 7 So. 642, 644 (Fla. 1890) (town council was without authority to authorize the acting mayor to defend at the town's expense a suit which had been filed against the acting mayor by a defeated candidate to test the validity of the town election); Williams v. City of Miami, 42 So.2d 582 (Fla. 1949) (city had no interest in defending a suit arising out of a recall election); AGO's 071-185 and 071-276.
Applying the foregoing cases and Attorney General Opinions to your inquiry, it is my opinion that the expenditure of public funds, either from your office income or budgeted funds or county funds, to defend you in your capacity as the successful candidate or nominee in an election contest proceeding brought pursuant to s. 102.161, F. S., would be improper. To the extent that the lawsuit represents a `legal battle' between an unsuccessful and a successful candidate or nominee to determine who is entitled to the office of supervisor of elections, it would appear that the outcome of such litigation is dependent upon the validity of the absentee ballots cast and is, therefore, personal to the candidates involved. Furthermore, no additional factors which would indicate sufficient public interest in the outcome of the election contest are made apparent from the face of the complaint.Compare Estes v. City of North Miami Beach, 227 So.2d 33, 34
(Fla. 1969), wherein the Supreme Court found that it was not an abuse of discretion for the city council to engage special counsel to defend a law suit filed against four of the seven members of the city council and the city attorney by a defeated candidate for city councilman. The court held that the challenged appropriation of municipal funds to pay such special counsel must be considered in light of the following facts: a majority of the city council were defendants in the law suit; the plaintiff sought a judicial construction of the provisions of the municipal election code and an injunction against the defendants restraining them from performing all their official duties on behalf of the municipality other than legislative action. See also Miller v. Carbonelli,80 So.2d 909 (Fla. 1955), holding that the town council was authorized to engage an attorney to defend the mayor in a quo warranto proceeding brought by one councilman against the new mayor elected by the council from their own number challenging both the right of the newly elected mayor to assume office and the action of the council electing him where `the issue not only immediately and directly affected the proper governance and administration of village affairs but the official action of the councilmen as electors was challenged.'
The fact that the supervisor of elections is a member of the county canvassing board does not alter the conclusion set forth above. Section 102.161, supra, requires that the canvassing board be made a party defendant, as an entity, to an election contest proceeding brought pursuant to that section. The members of such canvassing board, therefore, are only nominal defendants who are required to be joined by statute. [It should be noted that the Legislature has recently amended s. 102.141, F. S., to provide for the replacement of a member of the county canvassing board if such member is unable to serve or `is a candidate who has opposition in the election being canvassed or is an active participant in the campaign or candidacy of any candidate who has opposition in the election being canvassed . . . .' Section 26 of Ch. 77-175, Laws of Florida, effective January 1, 1978. With specific regard to the supervisor of elections, s. 26 of Ch. 77-175 provides that if the supervisor of elections is unable to serve or is disqualified pursuant to the section, then the chairman of the board of county commissioners shall appoint a member of the board of county commissioners who is not a candidate with opposition in the election being canvassed; however, the supervisor is required to act in an advisory capacity to the canvassing board.] Cf. State exrel. Hutchins v. Taylor, 143 So. 754, 757 (Fla. 1932), holding that, in the absence of statutory authorization, a county judge cannot be replaced as a member of the canvassing board because he is a candidate in the election canvassed. The duties imposed upon the county canvassing board `to canvass the returns of a[n] . . . election are ministerial in their nature, involving no discretion.' (Emphasis supplied.) State ex rel. Knott v. Haskill,72 So. 651 (Fla. 1916); See also State ex rel. Peacock v. Latham,170 So. 472 (Fla. 1936). Accordingly, a county canvassing board possesses no authority to pass upon the regularity of an election or the qualifications of persons thereat. State v. McLin, 16 Fla. 17
(1876). County canvassers have no power to go beyond the inspectors' returns except to determine their genuineness, nor may the canvassing board reject returns which are genuine on their face. State ex rel. Bisbee v. Board of Canvassers of Alachua County, 17 Fla. 9 (1878). Applying these principles to your inquiry, it is clear that the canvassing board is not authorized to determine whether or not the supervisor of elections unlawfully solicited absentee ballots; such a determination can only be made by the judiciary by means of the election contest. Thus, while the county is authorized to defend the canvassing board as an entity
in an election contest (see AGO 068-70), neither county funds nor funds budgeted in the office account of the supervisor of elections may be used to defend the supervisor of elections who was the successful candidate or nominee in an election contest predicated on the validity of absentee ballots, which absentee ballots were alleged to have been unlawfully solicited by the supervisor of elections.
Your question is accordingly answered in the negative.
Prepared by: Patricia R. Gleason Assistant Attorney General