427 So.2d 174 (1983)
ORANGE COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY, Appellant,
v.
STATE of Florida, Appellee.
No. 62340.
Supreme Court of Florida.
January 27, 1983.
*175 Leighton D. Yates, Jr. and Jonathan D. Rich of Maguire, Voorhis & Wells, P.A., Orlando, for appellant.
Robert Eagan, State Atty. and David S. Glicken, Asst. State Atty., Orlando, for appellee.
EHRLICH, Justice.
This cause is before the Court on direct appeal from a judgment of the circuit court denying validation of industrial development revenue bonds, the proceeds of which are for the construction of a television station. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. We find that the proposed project does not qualify as an industrial or manufacturing plant under Chapter 159, Florida Statutes (1981), nor does the project serve a paramount public purpose and we thus affirm the order of the trial court.
*176 Appellant, the Orange County Industrial Development Authority, sought validation of $9,000,000 of industrial development revenue bonds requested by the Outlet Company and WCPX-TV, Outlet's television station in Orlando. The money would be spent to buy land and build a new 45,000 square feet facility to accommodate two broadcast studios and related offices, as well as to acquire and install machinery, equipment and other appurtenances. The station would not be a completely new project in the Orlando area but rather an expansion of an existing business, since WCPX-TV (formerly WDBO) has for many years been in operation as a commercial television station and the CBS network affiliate in the Orlando area. Executives of WCPX anticipated that a minimum of twenty-five jobs would be created by this project, increasing employment at the station from 110 to 135 persons. A major rationale for the bond money request was the station presently turning away profitable commercial production business due to the size of the present physical facility. It was also claimed that the new facilities would allow the station to increase its local news services as well as the production of public service announcements.
The trial court, in a brief order, found that the proposed project did not qualify as an industrial or manufacturing plant. In addition, that court further found that the project did not serve a paramount public purpose. The trial court then denied the petition for validation.
The starting point for any discussion of industrial revenue bonds is article VII, section 10, Florida Constitution.[1] Before 1968, that section's predecessor, article IX, section 10 of the Florida Constitution of 1885,[2] had been interpreted by this Court as generally proscribing industrial revenue bonds as an invalid lending of public credit for private purposes. See State v. Manatee County Port Authority, 193 So.2d 162 (Fla. 1966); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952). It was only where the private benefit was strictly incidental to a paramount public purpose did the Court approve such financing. See Panama City v. State, 93 So.2d 608 (Fla. 1957); State v. Daytona Beach Racing & Recreational Facilities District, 89 So.2d 34 (Fla. 1956); Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953); State v. Board of Control, 66 So.2d 209 (Fla. 1953). See also, Tew, Industrial Bond Financing and the Florida *177 Public Purpose Doctrine, 21 U.Miami L.Rev. 171 (1966). When the 1968 Constitution was adopted, the rule of the 1885 Constitution relating to the advancing of public credit to aid private persons was continued. Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). However, the new constitutional provision had a significant limitation on the credit prohibition. Subsection (c) provided, inter alia, that the general prohibition of article VII, section 10 shall not prohibit the issuance and sale of revenue bonds by a special district or other local governmental body to finance the cost of capital projects for industrial or manufacturing plants. To implement this new exception, the legislature passed Chapter 69-104, Laws of Florida, in 1969. See State v. County of Dade, 250 So.2d 875, 877 (Fla. 1971). See also § 159.26, Fla. Stat. (1981). Codified as Part II of Chapter 159, Florida Statutes, the "Florida Industrial Development Financing Act" specifically permitted, as does the Constitution, financing of "industrial or manufacturing plants." However, if this Court finds that a contested project does not fall within that authorized type, then the project must "run the gauntlet"[3] and pass scrutiny under the cases decided prior to the 1968 constitutional change to see if it is permissible under article VII, section 10's general rule requiring a paramount public purpose. Only then can the project be validated.
We find that the instant project does not fall within the types authorized by Chapter 159. We do not believe that the legislature intended to define "industrial or manufacturing plant" to include a commercial television station. Several indicators bear this out.
First, television stations are not included among the projects specifically designated as permissible under Chapter 159. It is clearly not an agricultural processing or storage facility, a research and development park, a mill, a processing plant, an assembly plant, a fabricating plant, or any of the other enumerated types of project. § 159.27(5), Fla. Stat. (1981).
Second, when this Court looks to the plain language of the statute in its ordinary sense, the words are clear and unambiguous and hence we need not resort to other rules of statutory construction. Plainly, and on its face, an industrial or manufacturing plant does not subsume within it a television broadcast facility. To hold otherwise would be to give the words an unreasonable construction; such unreasonable construction is not entitled to the same deference as a reasonable one. Wakulla County v. Davis, 395 So.2d 540 (Fla.), superseded by statute as stated in Metropolitan Dade County v. Bridges, 402 So.2d 411 (Fla. 1981); Gracie v. Deming, 213 So.2d 294 (Fla. 2d DCA 1968).
Third, even with the liberal construction of Chapter 159 mandated by statute, sections 159.43 and 159.53, Fla. Stat. (1981), and by case law, State v. Jacksonville Port Authority, 305 So.2d 166 (Fla. 1974), a television station cannot be construed as an "industrial plant."[4] The dictionary definition of "industry" includes requirement of the employment of a large personnel as well as capital. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1155-56 (1976). The relatively small number of persons employed at the broadcast facility hardly qualifies as a large number of personnel. On the other hand, to strictly and liberally follow the dictionary definition of an industrial plant proffered by appellant would be to prove too much; by its definition, *178 any business would qualify as a project eligible to receive tax free industrial development revenue bonds.
Federal cases cited by appellant for the proposition that broadcasting is an industry are not persuasive. See FCC v. WNCN Listeners Guild, 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981); Broadcast Music, Inc. v. Columbia Broadcasting System, 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979); FCC v. National Citizens Committee for Broadcasting, 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978); Teleprompter Corp. v. Columbia Broadcasting System, 415 U.S. 394, 94 S.Ct. 1129, 39 L.Ed.2d 415 (1974), superseded by statute as stated in WGN Continental Broadcasting Co. v. United Video, Inc., 693 F.2d 622 (7th Cir.1982); Columbia Broadcasting System v. Democratic National Committee, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973); and American Broadcasting Co. v. FCC, 191 F.2d 492 (D.C. Cir.1951). Mere references to the "broadcasting industry" in several cases cannot be taken to mean that any facility connected with broadcasting would constitute "an industrial plant" according to that term's everyday meaning, nor is it even persuasive of the level of the legal meaning of the term.
Similarly, decisions cited by appellant from other states are inapposite. See Messenger Publishing Co. v. Board of Property Assessment, 183 Pa.Super. 407, 132 A.2d 768 (1957); City of Pittsburgh v. WIIC-TV Corp., 14 Pa.Commw. 18, 321 A.2d 387 (1974). These cases were taxation cases falling under statutes far different than the one at issue here, and within the context of public policies greatly dissimilar.
Florida cases cited by appellant are likewise no authority for its position. In State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982), the Court focused on the aspect of whether the proposed hotel project served a paramount public purpose and not on whether the hotel was an industrial or manufacturing plant. Language stating otherwise was dicta. Likewise, State v. Volusia County Industrial Development Authority, 400 So.2d 1222 (Fla. 1981), with its bond issue for a nursing home, was also a public purpose case. State v. Leon County, 400 So.2d 949 (Fla. 1981), specifically grounded its nursing home project within the framework of paramount public purpose and explicitly stated that "we need not determine whether a nursing home project comes within the definition of `industrial or manufacturing plants.'" 400 So.2d at 951. These cases, then, did not expand the concept of industrial or manufacturing plants to include hotels and nursing homes (which, by extrapolation according to appellant, should also include a television station); while the concept has been viewed liberally, it has not been obliterated. The furthest this Court has gone in its expansive reading of what constitutes an industrial plant was State v. Jacksonville Port Authority, 305 So.2d 166 (Fla. 1974). There, we validated bonds for a food distribution center and an industrial laundry, and only grudgingly found the latter to be an industrial plant. Since that decision, we have not extended the definition of "industrial plant" to include any project not specifically listed in Chapter 159, Part II. We shall not now. We thus hold that the commercial television station at issue here is not an industrial or manufacturing plant within the intendment of Chapter 159.
This Court has recognized that the listing of particular authorized projects in article VII, section 10(c) of the Florida Constitution was not intended to deny public revenue bond financing of other types of projects. In Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971), we said that "the naming of these particular projects was not intended to be exclusive." 247 So.2d at 308. This Court then went on to establish a two-prong test for determining whether revenue bonds for other projects would be validly authorized pursuant to the constitution. The two criteria are (1) whether the revenue bonds contemplate a pledge of the credit of the state or political subdivision and (2) whether the funded project serves a paramount public purpose, although there might be an incidental private benefit. 247 So.2d *179 at 309. This test was reaffirmed in subsequent decisions. See State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982); State v. Leon County, 400 So.2d 949 (Fla. 1981); State v. City of Miami, 379 So.2d 651 (Fla. 1980); Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1978).
As far as the first prong is concerned, there is no disagreement that the instant bonds will be payable solely from the sale, operation or leasing of the project and will not constitute a debt, liability or obligation of the appellant, the state, or any other subdivision thereof. The first criterion is thus clearly and easily met. The second, however, is not.
Running throughout this Court's decisions on paramount public purpose is a consistent theme. It is that there is required a paramount public purpose with only an incidental private benefit. If there is only an incidental benefit to a private party, then the bonds will be validated since the private benefits "are not so substantial as to tarnish the public character" of the project. State v. City of Miami, 379 So.2d 651, 653 (Fla. 1980). See also Panama City v. State, 93 So.2d 608 (Fla. 1957); State v. Daytona Beach Racing & Recreational Facilities District, 89 So.2d 34 (Fla. 1956); Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953). If, however, the benefits to a private party are themselves the paramount purpose of a project, then the bonds will not be validated even if the public gains something therefrom. "Every new business, manufacturing plant, or industrial plant which may be established in a municipality will be of some benefit to the municipality." State v. Town of North Miami, 59 So.2d 779, 784 (Fla. 1952). "Incidental benefits accruing to the public from the establishment of some private enterprise is [sic] not sufficient to make the establishment of such enterprise a public purpose." Adams v. Housing Authority of Daytona Beach, 60 So.2d 663, 669 (Fla. 1952), overruled on other grounds, Baycol, Inc. v. Downtown Development Authority, 315 So.2d 451 (Fla. 1975). Contra, State v. Housing Finance Authority of Polk County, 376 So.2d 1158 (Fla. 1979).
In the instant case, we find that the proposed project would not serve a paramount public purpose but rather a paramount private purpose. The Outlet Company would save around $300,000 per year for the life of the bonds. There will be no benefit to the public other than the improved local news coverage which might produce a more informed citizenry in the central Florida area, a minimal increase in employment, limited economic prosperity to the community, and an alleged advancement of the general welfare of the people. A broad, general public purpose, though, will not constitutionally sustain a project that in terms of direct, actual use, is purely a private enterprise. State v. Manatee County Port Authority, 193 So.2d 162 (Fla. 1966); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952).
Appellant's reliance upon State v. City of Jacksonville, 50 So.2d 532 (Fla. 1951), is misplaced. While there we allowed the issuance of municipal revenue certificates to finance the addition of television equipment for a radio station, that station was owned not by a private party but by the City of Jacksonville. The presence of municipal ownership was significant in our finding a public purpose in the project. Municipal ownership is absent in the project sub judice. We hold, then, that the proposed television station does not serve a paramount public purpose and hence is proscribed by our constitution.
Our discussion leads to this conclusion: the commercial television station at issue is not an industrial or manufacturing plant and does not serve a paramount public purpose. The project thus is not a proper one for which the Orange County Industrial Development Authority may authorize bonds. Hence, we affirm the trial court's invalidation of these bonds.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
ALDERMAN, C.J., dissents with an opinion, with which ADKINS, J., concurs.
*180 ALDERMAN, Chief Justice, dissenting.
I do not agree that the commercial television station in question is not an industrial or manufacturing plant under chapter 159 and that the project does not serve a paramount public purpose. In my view, the proposed project does fall within those projects authorized by chapter 159, part II, and is a proper project for which the Orange County Industrial Development Authority may authorize bonds.
The terms "industrial or manufacturing plant" are not specifically defined in the constitution or chapter 159. This Court has held that it is clear from a reading of this chapter that the legislature intended the phrase "industrial plant" to be liberally construed and that these terms should be given the broadest definition. State v. Jacksonville Port Authority, 305 So.2d 166 (Fla. 1974).[1] Section 159.43 expressly mandates a liberal construction of this act. We have also recently reiterated that the determination by a local agency as to whether a project comports with the statutory criteria and requirements delineated in section 159.291, which guide local agencies in undertaking projects pursuant to the Florida Industrial Development Financing Act, are final and conclusive and that the burden is placed on the party opposing the validation to demonstrate that the local agency's findings are completely without foundation. International Brotherhood of Electrical Workers v. Jacksonville Port Authority, 424 So.2d 753 (Fla. 1982).
The Orange County Industrial Development Authority, authorized and empowered to provide for the issuance of industrial development bonds, expressly found:
(B) In order to promote the economic growth of Orange County (the "County") and the industrial economy of the State of Florida, to increase purchasing power and opportunities for gainful employment, to improve living conditions and to advance and improve the economic prosperity and the general welfare of the State and its people, it is desirable that:
(1) The Authority provide for the issuance and sale of its Industrial Development Revenue Bonds, The Outlet Company Series (the "Bonds"), in the aggregate principal amount of $9,000,000... .
In its authorizing resolution the Authority determined that this project met all the statutory criteria enumerated in chapter 159. In my view, appellee failed to demonstrate that the final and conclusive determination of the Authority was completely without foundation.
The project in question is clearly an industrial plant within the contemplation of chapter 159. Broadcasting is a branch of business involving both the technical craft of creating a television signal and the art of writing and producing material for television broadcasts. It is a division of productive or profit-making labor, and it employs a large personnel and capital. A broadcasting station is the plant housing the total facilities available for the production of television broadcasts. Appellant has demonstrated that its broadcasting station is for the most part involved in the production of television programs, news programs, commercials, and public service announcements. This station is as much an industrial plant as the laundry facility, the beverage bottling plant, or the food distribution center previously found by this Court to be industrial plants within the intendment of the Florida Industrial Development Financing Act. State v. Jacksonville Port Authority, 305 So.2d 166 (Fla. 1974); State v. Jacksonville Port Authority, 266 So.2d 1 (Fla. 1972).
*181 Even were this television broadcast station not an industrial plant within the meaning of the act, these bonds should nevertheless be validated on the basis that this project serves a paramount public purpose. The Orange County Industrial Development Authority expressly determined that this project serves a paramount public purpose in that:
(1) the Project will increase gainful employment in the area by a minimum of 25 jobs;
(2) the Project should result in improved news coverage and consequently should produce a more informed citizenry in the Central Florida area; and
(3) the Project will be utilized to produce commercials and public service announcements to be used in other parts of the nation and consequently will enhance the position of Central Florida as a potential media center.
This determination is entitled to great weight, and the appellee is required to show that this determination is so clearly wrong as to be beyond appellant's authority. State v. Osceola County Industrial Development Authority, 424 So.2d 739 (Fla. 1982); State v. Orange County Industrial Development Authority, 417 So.2d 959 (Fla. 1982).
Additionally, the Federal Communications Commission, in granting this broadcast station a license, necessarily has concluded that this station serves the public interest. 47 U.S.C.S. § 307(a) (Law Co-op. 1981). If the station did not serve a paramount public purpose, it would not be allowed to broadcast. The Supreme Court of the United States has made it clear that the public has the right to receive suitable access to social, political, esthetic, moral, and other ideas and experiences and that the goal of the first amendment of the United States Constitution is to produce an informed public capable of conducting its own affairs. Red Lion Broadcasting Co. v. Federal Communications Commission, 395 U.S. 367, 89 S.Ct. 1795, 23 L.Ed.2d 371 (1969). Through regulation by the Federal Communications Commission, the broadcasting industry advances this goal. The Federal Communications Commission's judgment regarding how the public interest is best served is entitled to substantial judicial deference. Federal Communications Commission v. WNCN Listeners Guild, 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521 (1981).
The fact that WCPX-TV is a profit-making enterprise does not derogate from its paramount purpose of providing the public with suitable access to social, political, esthetic, moral, and other ideas and experiences. Any private benefit that the owners of the station might receive is secondary and incidental to the paramount public purpose which the station serves. In State v. Housing Financing Authority of Polk County, 376 So.2d 1158, 1160 (Fla. 1979), this Court said:
Under the constitution of 1968, it is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong. State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971). Of course, public bodies cannot appropriate public funds indiscriminately, or for the benefit of private parties, where there is not a reasonable and adequate public interest. An indirect public benefit may be adequate to support the public participation in a project which imposes no obligation on the public, and the qualification of the direct beneficiary complies with the principles of due process and equal protection.
If this private enterprise did not exist to furnish the public suitable access to these ideas and experiences, some public entity would have to fill the void. See e.g. State v. City of Jacksonville, 50 So.2d 532 (Fla. 1951), wherein the broadcasting station was owned by the City of Jacksonville and wherein this Court held that the maintenance and operation of the radio broadcasting station by the City and the making of improvements thereto constituted a valid municipal purpose.
I would reverse the judgment of the trial court and validate these bonds.
ADKINS, J., concurs.
NOTES
[1] Pledging credit.  Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:

(a) the investment of public trust funds;
(b) the investment of other public funds in obligations of, or insured by, the United States or any of its instrumentalities;
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities, or (2) revenue bonds to finance or refinance the cost of capital projects for industrial or manufacturing plants to the extent that the interest thereon is exempt from income taxes under the then existing laws of the United States, when, in either case, the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. If any project so financed, or any part thereof, is occupied or operated by any private corporation, association, partnership or person pursuant to contract or lease with the issuing body, the property interest created by such contract or lease shall be subject to taxation to the same extent as other privately owned property.
(d) a municipality, county, special district, or agency of any of them, being a joint owner of, giving, or lending or using its taxing power or credit for the joint ownership, construction and operation of electrical energy generating or transmission facilities with any corporation, association, partnership or person.
[2] Credit of state not to be pledged or loaned.  Section 10. The credit of the State shall not be pledged or loaned to any individual, company, corporation or association; nor shall the State become a joint owner or stock-holder in any company, association or corporation. The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stock holder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual.
[3] See Nohrr v. Brevard County Educ. Facilities Auth., 247 So.2d 304 (Fla. 1971):

All other proposed public revenue bond projects not falling into the exempted class described in Section 10(c) of Article VII would, of course, have to run the gauntlet of prior case decisions to test whether the lending or use of public credit for any of them was contemplated.
247 So.2d at 308-09. See also Wald v. Sarasota County Health Facilities Auth., 360 So.2d 763 (Fla. 1978).
[4] Appellant concedes in his brief that the production of television programming is not manufacturing. Brief of Appellant at 22.
[1] In State v. Jacksonville Port Authority we recited the following definition of industry found in Webster's New International Dictionary, Unabridged (1961):

3b. A department or branch of a craft, art, business, or manufacture: a division of productive or profit-making labor, esp. one that employs a large personnel and capital, esp. in manufacturing. c. a group of productive or profit-making enterprises or organizations that have a similar technological structure of production and that produce or supply technically substitutable goods, services, or sources of income, [as] the poultry industry... .
305 So.2d at 168-69.