Mr. Parks M. Carmichael City Attorney City of Chiefland Post Office Drawer C Gainesville, Florida 32602
Dear Mr. Carmichael:
This is in response to your request for an opinion on substantially the following question:
 MAY THE CITY COMMISSION OF THE CITY OF CHIEFLAND ENTER INTO A CONTRACT OF LIMITED INDEMNITY AGAINST FINANCIAL LOSSES TO A PRIVATE PROVIDER OF EMERGENCY HEALTH CARE?
The City of Chiefland is interested in entering into a contract whereby the city would agree to indemnify a private, for profit, health care center for financial losses which the center might experience over a two year period of time. Under the proposed agreement, the city would agree to indemnify the private corporation for fifty percent of any loss that the corporation might incur in operating the center up to $1,500.00 per month for a period of time not to exceed 24 months. It appears from the information contained in the proposed agreement that the center in question is to be created by making certain minor renovations to an existing office of a local doctor who presumably already provides medical care to the inhabitants of the city. You state in your letter that although the emergency health care center would be located within the city, the center would serve the people within the western part of Levy County, a large portion of Gilchrist County, and all of Dixie County; thus you conclude that the city could be indemnifying the private corporation for losses the major portion of which or all of which occurred outside of the City of Chiefland.
Section 10, Art. VII, State Const., prohibits the state or counties or municipalities or any agency thereof from using, giving, or lending its taxing power or credit to aid any private interest or individual. The purpose of this constitutional provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited." Bannon v. Port of Palm Beach District, 246 So.2d 737, 741 (Fla. 1971). Cf., Markham v. State Department of Revenue, 298 So.2d 210 (1 D.C.A. Fla., 1974); State v. Town of North Miami, 59 So.2d 779
(Fla. 1952); and Bailey v. City of Tampa, 111 So. 119 (Fla. 1926). It is only when there is some clearly identified and concrete public purpose as the primary objective and a reasonable expectation that such purpose will be substantially and effectively accomplished, that the state or its subdivisions may disburse, loan or pledge public funds or property to a nongovernmental entity. O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). The Florida Supreme Court in Orange County Industrial Development Authority v. State, 427 So.2d 174 (Fla. 1983), recently reaffirmed its test that the purpose served in the proposed expenditure must be paramountly a public one. If, however, the benefits to a private party are the paramount purpose of a project, then the expenditure is not valid even if the public derives some benefit therefrom. Id. at 179. And see, Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971), wherein the court stated that the word "credit" as used in s 10, Art. VII, State Const., prohibiting the pledge of credit of the state, counties or municipalities in aid of corporations or persons implies the imposition of some new financial liability upon the state or political subdivision which in effect results in the creation of a state or political subdivision debt for the benefit of private enterprises.
Furthermore, s 1, Art. VII, State Const., impliedly limits the imposition of taxes and the expenditures of tax revenues to public purposes. See, Board of Commissioners v. Board of Pilot Commissioners, 42 So. 697 (Fla. 1906); Brown v. Winton, 197 So. 543
(Fla. 1940); AGO's 82-83, 80-93, 71-28. As a general principle, the power to levy and collect taxes and the power to appropriate public funds are coexistent and if a tax cannot be levied for a particular purpose, no appropriation of public money can be made for such purpose. See generally, 81A C.J.S. States s 205 in which the rule is stated: "Generally, under express or implied constitutional provisions, public funds may be used only for a public purpose." And see, 81A C.J.S. States ss 207, 209, 210; 56 Am.Jur.2d Municipal Corporations s 588. In Brumby v. City of Clearwater, 149 So. 203 (Fla. 1933), the Florida Supreme Court construing an analogous provision of the 1885 Constitution, invalidated a contract between the municipality and a private individual under which the municipality agreed to dredge a channel leading to the individual's place of business. The court stated that the contract was void because it clearly required the appropriation of public money for the individual's benefit and was an attempt to finance a private business enterprise for the use and benefit of an individual. Id. at 204. And see, AGO 72-129, in which this office concluded:
 [C]onstruction of a doctor's building by a county or hospital corporation to be leased to and operated under the supervision and control of private physicians in the private practice of medicine would probably violate the constitutional prohibition against a county's or special district's using its taxing power or credit in aid of private persons or corporations.
In the instant situation, the indemnification of a private for profit corporation would impose a new financial obligation upon the municipality which would create a municipal debt for the benefit of a private enterprise. While the public would receive some benefit from the provision of emergency medical services to the city's inhabitants, this indemnification agreement would in my opinion primarily serve a private as opposed to a public purpose, and therefore, would probably violate the constitutional prohibition against a city using its taxing power or credit in aid of private persons or corporations.
It is therefore my opinion that a municipality is prohibited by s 10, Art. VII, State Const., from agreeing to indemnify a private for profit corporation for financial losses which might be suffered over the term of the agreement in the provision of emergency medical services to the inhabitants of a three county area.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General