Jacqueline W. Hubbard City Attorney City of Fort Myers
QUESTION:
May the City of Fort Myers utilize the proceeds of a special assessment bond issue under Ch. 170, F.S., to reimburse the private developer of an area specifically benefited by the improvements for the cost of obtaining Development of Regional Impact approval?
SUMMARY:
The expenditure by the City of Fort Myers of the proceeds of a special assessment bond issue under Ch. 170, F.S., to reimburse the private developer of an area specifically benefited by the improvements for the cost of obtaining Development of Regional Impact approval is not authorized.
You state that the owner of a parcel of property in the City of Fort Myers brought forward a development plan for a Development of Regional Impact for the property. The developer secured the requisite Development of Regional Impact (DRI) approval. The development order required certain offsite road public improvements to mitigate the impact of the development on traffic. The project itself required the normal complement of internal infrastructure public improvements consisting of road, sewer, water, reuse water and drainage improvements.
The developer requested and the city agreed to establish a special assessment geographical area to provide a means for financing the public improvements and offsite road public improvements required by the Development Order.[1] The city agreed to reimburse the developer for the costs relating to those public improvements which were those authorized to be financed by special assessment pursuant to Ch. 170, F.S.[2] A bond resolution implementing the assessments and authorizing special assessment bonds was subsequently approved. The city has received requests for reimbursement from the developer for various DRI related expenses.
You state that it is not necessary to obtain a DRI development order in order to provide the type of infrastructure at issue in the instant inquiry. You further state that the infrastructure is not included in any statutory DRI category or threshold,[3]
but rather is a necessary and fundamental component of developmental projects, not just those of DRI magnitude.
Chapter 170, F.S., provides a supplemental and alternative method of making local municipal improvements. Section 170.01(1), F.S., states that a municipality may:
 (a) Provide for the construction, reconstruction, repair, paving, repaving, hard surfacing, . . . widening, guttering, and draining of streets, boulevards, and alleys and for grading, . . .leveling, laying, . . . paving, . . . hard surfacing . . . of sidewalks;
(b) Order the construction, . . . repair, renovation, excavation, grading, stabilization, and upgrading of greenbelts, swales, culverts, sanitary sewers, storm sewers, outfalls, canals, . . . drains, water bodies, marshlands, and natural areas, all or part of a comprehensive stormwater management system, including the necessary appurtenances and structures thereto and including, but not limited to, dams, weirs, and pumps;
(c) Order the construction or reconstruction of water mains, water laterals, and other water distribution facilities, including the necessary appurtenances thereto;
(d) Provide for the drainage and reclamation of wet, low, or overflowed lands;
(e) Provide for offstreet parking facilities, parking garages, or similar facilities;
(f) Provide for mass transportation systems; and
(g) Provide for the payment of all or any part of the costs of such improvements by levying and collecting special assessments on the abutting, adjoining, contiguous, or other specially benefited property.
Such improvements may be funded by special assessments which may be levied only for the purposes enumerated in s. 170.01, F.S.,[4]
Bonds may be issued to an amount not to exceed the amount of the liens assessed for the cost of the improvements to be paid by special assessment.[5]
Section 170.03, F.S., provides in pertinent part:
When the governing authority . . . determine[s] to make any public improvement authorized by s. 170.01 and defray the whole or any part of the expense thereof by special assessments, said governing authority shall so declare by resolution stating the nature of the proposed improvement . . . . Such resolution shall also state the total estimated cost of the improvement. Such estimated cost may include the cost of construction or reconstruction, the cost of all labor and materials, the cost of all lands, property, rights, easements, and franchises acquired, financing charges, interest prior to and during construction and for 1 year after completion of construction, discount on the sale of special assessment bonds, costs of plans and specifications, surveys of estimates of costs and of revenues, cost of engineering and legal services, and all other expenses necessary or incident to determining the feasibility or practicability of such construction or reconstruction, administrative expense, and such other expense as may be necessary or incident to the financing herein authorized.
The above statute authorizes payment of the costs "necessary or incident to" the improvements. As noted above, no DRI development order was necessary in order to provide the type of infra-structure under consideration. From the information provided to this office, it appears that the DRI related expenses and studies were incurred to determine the economic feasibility or practicability of developing the property, not the infrastructure, by assessing the impact of the development. The fact that such studies relating to development for the private property indicated a need for the construction of new infrastructure due to the development does not make such studies incidental to the infrastructure. The need for the new infrastructure arose because of the proposed development.
Thus, the DRI related expenses would appear to be incidental costs of the development, not the infrastructure. I am, accordingly, of the opinion that the city is not authorized under s. 170.03, F.S., to pay the expenses directly attributable to obtaining the DRI for the development of the property.
Section 10, Art. VII, of the State Constitution prohibits the expenditure of public funds for a private purpose.[6] It is only when there is some clearly identified and concrete public purpose as the primary objective that a municipality may disburse, loan or pledge public funds or property to a nongovernmental entity.[7] If the benefits to a private party are the paramount purpose of a project, then the expenditure of public funds is not valid even though the public derives some benefit therefrom.[8]
In addition, s. 1, Art VII, State Const., implicitly limits the exercise of the taxing power and expenditure of revenues derived therefrom to public purposes.[9] This office has consistently stated that special assessments, while not a tax, constitute a peculiar form of taxation and are levied under the taxing power.[10] Thus, this office has concluded that municipalities do not have the authority, absent specific authorization, to impose special assessments.[11]
The use of bond proceeds payable from the special assessments imposed pursuant to Ch. 170, F.S., to reimburse the DRI related costs incurred in developing the property would appear to primarily benefit the private developer. Moreover, as noted above, s. 170.01, F.S., expressly limits the levy of special assessments to the purposes set forth therein and the city would not appear to be authorized under s. 170.03, F.S., to pay the expenses directly attributable to obtaining the DRI for the development of the property.
Accordingly, I am of the opinion that the expenditure by the City of Fort Myers of the proceeds of a special assessment bond issue under Ch. 170, F.S., to reimburse the private developer of an area specifically benefited by the improvements for the cost of obtaining Development of Regional Impact approval is not authorized.
RAB/tjw
[1] See, Resolution No. 91-24, creating the area to provide for "the acquisition, construction and installation of roadways, paving and drainage improvements, a water distribution system, a wastewater collection system, and other appurtenant facilities."
[2] The agreement between the city and developer obligates the city to reimburse the developer for the cost of construction, engineering fees and administrative costs, including legal fees, as they relate to the improvements.
[3] See, s. 380.0651, F.S.
[4] Section 170.01(2), F.S. Where a statute enumerates the things upon which it is to operate, it is ordinarily construed as excluding from its operation all things not expressly mentioned.See, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[5] See, s. 170.11, F.S.
[6] Section 10, Art. VII, State Const., provides in part that "[n]either the state nor any county, school district, municipality, special district, or agency of any of them, shall . . . give, lend or use its taxing power or credit to aid any corporation, association, partnership or person . . . ."
[7] O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). Andsee, Orange County Industrial Development Authority v. State,427 So.2d 174 (Fla. 1983), in which the Court reaffirmed that the paramount purpose served in the proposed expenditure must be a public one.
[8] Orange County Industrial Development Authority v. State, supra at 179.
[9] See, Board of Commissioners v. Board of Pilot Commissioners, 42 So. 697 (Fla. 1906). AGO's 80-94 and 71-28.
[10] See, e.g., AGO's 90-39, 89-85, 83-64 and authorities cited therein.
[11] See, e.g., AGO's 84-48 and 82-9.