Mr. Noah C. McKinnon, Jr. Flagler County Attorney Post Office Box 305 Ormond Beach, Florida 32175
Dear Mr. McKinnon:
You ask the substantially following question:
May the county commission expend public funds to repair drainage canals located on the private property of several large landowners if the county is given a thirty-day easement?
In sum:
The determination of whether the expenditure of county funds serves a county purpose is one that the board of county commissioners, as the legislative body for the county, must make. However, granting a temporary easement of thirty days to the county would not appear to satisfy the public purpose requirement for the expenditure of public funds if the expenditure of such funds is not otherwise permissible.
According to your letter, many of the farms located in the western portion of Flagler County have become inundated with water due to the substantial rainfall experienced by the county in recent months. Although drainage canals or ditches are located on a number of the farms, Flagler County does not own easements to maintain the canals or ditches. While it has been the policy of the county for the last twenty years to maintain all canals that directly affect public roads, the canals in question, according to information provided to this office, do not fall within this category. While the possibility of using the provisions of Chapter 157 and section 125.01(1)(q), Florida Statutes, has been discussed by the county, the county has not utilized the procedures set forth therein at this time.[1]
You state that many of the landowners are unwilling to provide a permanent public easement to provide access to the canals for maintenance work. They are willing, however, to provide a thirty-day temporary easement for the county to allow this work. You have advised the county that a temporary easement makes it more difficult to conclude that the maintenance activity fulfills a public purpose.
Article VII, section 10, Florida Constitution, prohibits the state and its subdivisions from using their taxing power or pledging public credit to aid any private person or entity. The purpose of this constitutional provision is "to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would be at most only incidentally benefited."[2] However, if the expenditure primarily or substantially serves a public purpose, the fact that the expenditure may also incidentally benefit private individuals does not violate Article VII, section 10.[3]
Thus, in order to satisfy Article VII, section 10, Florida Constitution, the expenditure of county funds must be for a public purpose. This office, in determining whether public funds may be expended for improvements to private property such as private roads, has considered whether the governmental entity has a property right or interest in such property or whether the public has an easement or right to use the property.
For example, in Attorney General Opinion 79-14, this office concluded that the expenditure of public funds by a municipality to repair or maintain private streets in which the municipality has no property rights or interest, and over which the public has no easement or right of use, would appear to contravene the public purpose requirements of Article VII, section 10, Florida Constitution.[4] Similarly, this office in Attorney General Opinion 85-101 concluded that public funds could not be used to maintain a private bridge that was not open to or set apart for the public and upon which the public had no right to travel.
In Northern Palm Beach County Water Control District v. State,[5]
the Supreme Court of Florida in a 4-3 decision concluded that Article VII, section 10, Florida Constitution, did not prohibit the water control district from issuing bonds to finance onsite road improvements in a district created for the purpose of draining and reclaiming the land. In reaching its decision, the Court relied on the fact that the district's taxing power was not involved, there was no pledge of the district's credit, the Legislature had set forth a declaration of the public purpose to be served, and the district would retain ownership of the roadways in question.
The Court expressed concern that public access to the roads would be limited: "[T]he fact that public access to the roads will be limited raises a question of whether the stated public purposes are only incidental to a primary private purpose. . . ."[6] The fact that the district retained ownership of the roadways in question, coupled with the legislative declaration of a public purpose, "leads us to the conclusion that the on-site improve-ments serve a public purpose."[7] The Court stated, however, that "[a] broad, general public purpose . . . will not constitutionally sustain a project that in terms of direct, actual use, is purely a private enterprise."[8]
In the instant inquiry, the canals or ditches are located on private property over which neither the public nor the county has an easement. Granting a temporary easement to the county for the purpose of entering upon the property to repair the canals or ditches would not appear to be sufficient to satisfy the public purpose requirements of Article VII, section 10, Florida Constitution. The temporary grant of an easement would not appear to recharacterize the property involved as public property for which public funds may clearly be spent.
The determination, however, of what constitutes a valid public purpose is a factual determination for the legislative and governing body involved, in this case the Flagler County Board of County Commissioners. Such a determination is one that must be made by the county commission and cannot be delegated to this office.[9]
Accordingly, I am of the opinion that while the determination of whether the expenditure of county funds serves a county purpose is one that the board of county commissioners, as the legislative body for the county, must make, granting a temporary easement of thirty days to the county would not appear to satisfy the public purpose requirement for the expenditure of public funds if the expenditure of such funds is not otherwise permissible.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Chapter 157, Florida Statutes, provides for drainage by counties, including the construction of public ditches, drains or canals. Section 125.01(1)(q), Florida Statutes, authorizes the creation of municipal service taxing units or benefit units within which may be provided essential facilities and municipal services from funds derived from service charges, special assessments or taxes within such unit.
[2] Bannon v. Port of Palm Beach District, 246 So.2d 737, 741
(Fla. 1971).
[3] See, e.g., State v. Housing Finance Authority of Polk County,376 So.2d 1158, 1160 (Fla. 1979). If the county's taxing power or pledge of credit is involved, the improvements must serve a paramount public purpose. See, Orange County Industrial Development Authority v. State, 427 So.2d 174 (Fla. 1983). If, however, neither the taxing power nor a pledge of credit is involved, then it is enough to show only that a public purpose is involved. Linscott v. Orange County Industrial Development Authority, 443 So.2d 97 (1983).
[4] And see, Padgett v. Bay County, 187 So.2d 410 (Fla. 1st DCA 1966); Collins v. Jackson County, 156 So.2d 24 (Fla. 1st DCA 1963); Op. Att'y Gen. Fla. 73-222 (1973) (expenditure of county funds to provide minor work or repair on private roads). Cf., Brumby v. City of Clearwater, 149 So. 203 (Fla. 1933), in which the Supreme Court of Florida voided a contract between a city and a private individual whereby the city financed the dredging of a channel leading to the private individual's place of business, because "the contract clearly required the appropriation of public money for the individual benefit of the applicant[.]"
[5] 604 So.2d 440 (Fla. 1992).
[6] Id. at 443.
[7] Id.
[8] Id., quoting, Orange County Industrial Development Authority v. State, 427 So.2d 174, 179 (Fla. 1983).
[9] See, Ops. Att'y Gen. Fla. 90-37 (1990), 83-6 (1983), and 77-27 (1977), stating that the legislative determination and findings as to the purpose of the expenditure and the benefits accruing to the public body could not be delegated to the Attorney General nor could the Attorney General undertake to make such findings on behalf of the public body.