544 So.2d 230 (1989)
The CITY OF FORT WALTON BEACH, Appellant,
v.
Al GRANT, Appellee.
Patricia THORNBER, John Franklin, and al Grant, Appellants,
v.
The CITY OF FORT WALTON BEACH, Appellee.
Nos. 87-1900, 88-99.
District Court of Appeal of Florida, First District.
April 14, 1989.
Rehearings Denied June 30, 1989.
*231 James E. Moore of Moore & Moore, P.A., Niceville, for City of Fort Walton Beach.
George E. Day of George E. Day, P.A., Fort Walton Beach, for Thornber, Franklin and Grant.
BARFIELD, Judge.
These cases consolidated on appeal for record purposes only, originated from a six-count amended complaint filed by Fort Walton Beach Councilmen John Franklin, Patricia Thornber, and Al Grant, against the City of Fort Walton Beach. The Councilmen sued under section 111.07, Florida Statutes (1981), for reimbursement of attorney's fees, expended for private representation in several legal and administrative actions arising from the City Council's dismissal of the City Manager, Winston Walker, and the Police Chief and Director of Public Safety, Thomas B. Ray. In Case No. 87-1900, the City appeals from a final judgment in favor of Councilman Grant. In Case No. 88-99, Councilmen Thornber, Franklin and Grant appeal from a trial court order dismissing counts II, III and V of their amended complaint and, Councilmen Thornber and Franklin appeal from final judgment in favor of the City. We affirm the judgment in Case No. 87-1900, and affirm in part and reverse in part the judgment in Case No. 88-99.

I.
In May 1981, Kate Bagley was elected Mayor of the City of Fort Walton Beach, and Thornber and Franklin were elected to the City Council. Al Grant and Jim Baughman were already Councilmen. In June 1981, and prior to being sworn into office, Franklin, Thornber and Bagley met privately at Bagley's home and apparently drafted several resolutions which were ultimately passed by the entire City Council at an open, public meeting on July 6, 1981 (the newly elected officials had been sworn into office on July 1, 1981). The resolutions called for the resignation of City Attorney Walter Smith, the dismissal of City Manager Walker, the appointment of Mayor Bagley as Acting City Manager, and the appointment of Michael Mead as City Attorney.[1] Mayor Bagley, acting in the capacity of City Manager, then fired Police Chief Ray.
A number of legal and administrative actions were filed in reaction to the resolutions, accusing the City Council of misconduct, particularly violation of the "Government in Sunshine Law."[2] These actions formed the underlying legal basis for the councilmen's six-count amended complaint for statutory attorney's fees. In essence, the Councilmen alleged that the City had declined to represent them in the underlying *232 actions; that, as a result, they had to retain private counsel; and, that in each action, the Councilmen had prevailed and were entitled to reimbursement of attorney's fees under section 111.07.[3]
In count I, the Councilmen requested reimbursement of attorney's fees incurred in defending a declaratory judgment action filed against the City by Joseph Wilson, a taxpayer and resident of the City.[4] The Councilmen alleged that they had to give depositions in Wilson, in which they testified that former City Attorney Walter Smith had advised them that their presence at the private meeting would not violate the Sunshine Law.
In count II, the Councilmen requested reimbursement of fees and costs in bringing an action to enjoin recall petitions filed by citizens who sought removal of the Councilmen from public office on the basis of their alleged misconduct.[5] The Councilmen alleged that the attempted recalls had no basis in law or fact; that the petitions accused them of both civil and criminal misconduct which, if successful, would have laid a judicial predicate for money damages against the Councilmen; and, that they were therefore required to file the suit for injunctive relief.
In Count III, the Councilmen alleged that it was necessary for them to retain legal counsel to represent them in an administrative hearing on a grievance filed by Ray.[6] In count IV, the Councilmen requested reimbursement of attorney's fees incurred in defending a federal civil rights action filed by Ray against the City, Mayor Bagley, and the City Council in their official and individual capacities.[7] In count V, the Councilmen alleged that it was necessary for them to retain legal counsel to monitor a declaratory judgment action filed by Ray in circuit court.[8] The Councilmen alleged that if Ray had been successful in his declaratory judgment action, the Councilmen would have been subject to the claim of interference with his employment. Finally, in Count VI, the councilmen requested reimbursement of attorney's fees in the present action.
In January 1985, Judge G. Robert Barron granted the City's motion to dismiss *233 Counts II-VI for failure to state a cause of action upon which relief could be granted. Strictly construing section 111.07, the trial court found that the statute contemplated only reimbursement of attorney's fees for party-defendants, and prohibited the payment of attorney's fees on behalf of public officials who initiated litigation, (Count II). The court also found that the Councilmen were not legally required to defend the grievance petition filed by Thomas Ray, (Count III), and Ray's action in circuit court against the City Attorney (Count V). In dismissing Count IV, the court granted leave to amend the count to allege that the Councilmen had requested the City to provide an attorney for their defense in the federal lawsuit, and that the request had been denied. Finally, the court found that section 111.07 did not contemplate reimbursement of attorney's fees for filing the present lawsuit (Count VI). In a subsequent order, the trial court found that the City had never moved to dismiss count I of the amended complaint, and that the Councilmen had successfully amended count IV, so that dismissal of that count was void.[9] The Councilmen's appeal of the dismissal of Counts II, III and V, was dismissed by this court as untimely.[10]
In June 1985, the City filed its answer to the amended complaint, generally denying the allegations in count I, and asserting as an affirmative defense that the Councilmen were not named as party defendants in Wilson v. City of Fort Walton Beach, and did not intervene in the lawsuit, so that they were not entitled to an award under section 111.07. As to Count IV, the City admitted that Thomas Ray had filed a civil rights lawsuit in federal court against the City, the Mayor and the City Council, but otherwise denied its liability for reimbursement of attorney's fees under section 111.07, and asserted as an affirmative defense that it had provided an attorney for the Councilmen in the federal lawsuit.
In September 1985, the trial court entered an order granting the City's motion for summary judgment as to count I, finding that a genuine issue of material fact did not exist as to the Councilmen's request for reimbursement of attorney's fees relating to Wilson v. City of Fort Walton, in that the Councilmen were never named as individual defendants in that action. However, the trial court denied the motion for summary judgment as to Count IV, finding that there was a genuine issue of material fact as to representation of the Councilmen in both their official and individual capacities in the federal lawsuit.
In February 1987, the case proceeded to trial before Judge Erwin Fleet on Count IV of the amended complaint. Councilwoman Thornber testified that after she was elected, but before she was sworn into office, she had attended the meeting at Mayor Bagley's home. The trial judge asked her whether the proposed resolutions were discussed at the meeting. Thornber replied that they had discussed firing Police Chief Ray and City Manager Walker. Thornber also testified that she gave a deposition in Wilson v. City of Fort Walton, and that her attorney, George Day, represented her at that deposition. She stated that City Attorney Chesser had advised her that he could not represent her in the federal lawsuit due to the conflict of interest and that he had told her to retain a private attorney to represent her in both her individual and official capacities. She stated that Day filed an answer and motion to dismiss in the federal case on her behalf in both her capacities, and although she entered into a written retainer with Day, it was her understanding that the City would be ultimately responsible for paying his fees.
Councilman Grant testified that he had two or three conversations with City Attorney Chesser, who advised him that he *234 should also retain private representation in both capacities in the federal lawsuit. Grant also hired Day, but he never agreed to pay the attorney any fees because it was his understanding that the City was obligated. To the trial judge's inquiries about the meeting at Bagley's home, Grant replied that he had not attended that meeting and that he never discussed any proposed resolutions with his fellow councilmen before the public meeting.
Councilman Franklin testified that Michael Chesser had represented him at a deposition in the Wilson case before he became City Attorney, but that after he became City Attorney, Chesser advised Franklin to seek private counsel, suggesting Day. Franklin also testified that he never had an attorney/client relationship with Chesser in the federal lawsuit. To the judge's inquiries about the private meeting at Bagley's home, Franklin responded that it was a social function for coffee at which he, Bagley, Thornber and Bagley's private attorney, a Mr. Chandler from Washington, discussed the general state of the city and whether to retain City Manager Walker, but that no decision was reached. Franklin testified that prior to the public meeting on July 6, 1981, he had met with Chandler and former City Attorney Mead to discuss the chronological order of the proposed resolutions, which were drafted by Mead. Franklin stated that his decision to vote for Walker's dismissal was made 45 minutes before the public meeting.
City Attorney Chesser testified by deposition that he represented the Councilmen in their official capacities and that attorney Day represented them individually in the federal lawsuit. He stated that Mayor Bagley was represented in her individual capacity by a private attorney, and that Councilman Baughman also had an attorney to represent him in his individual capacity in the federal lawsuit.
After the Councilmen rested their case on the issue of liability, the City moved for a directed verdict, arguing that it was not liable for the attorney's fees in the federal lawsuit because former City Attorney Chesser had represented the Councilmen in their official capacities. The trial court denied the motion, stating that "the record before the Court right now shows very emphatically that he [Chesser] never undertook to represent them [the Councilmen] in their official or individual capacity." The City was unable to show the trial court that Chesser filed a pleading on behalf of the Councilmen in their official capacities. In fact, the pleadings from the civil rights lawsuit showed that Chesser had filed a motion for extension of time to file an answer on behalf of Bagley and the City; that Day had filed an answer and a motion to dismiss on behalf of councilmen Thornber, Franklin and Grant in their individual and official capacities; and, that Chesser had eventually filed an answer on behalf of the City only.
After the City rested its case, the Councilmen presented evidence on the amount of a reasonable attorney's fee. George Day testified to the hours he expended and rates at which he billed his clients. Expert witness, attorney Pat Maney, testified that the hours and rates billed were reasonable, and that applying Rowe, a reasonable fee for the services was $35,000.
In October 1987, the trial court entered final judgment, finding that Councilmen Thornber and Franklin had violated the Sunshine Law by participating in the "secret" meeting at Mayor Bagley's house, citing Tolar v. School Board of Liberty County, 398 So.2d 427 (Fla. 1981), and, that as a result, they had acted in bad faith under section 111.07 and were therefore not entitled to attorney's fees for their defense of the federal lawsuit. The court awarded reimbursement of fees to Councilman Grant, who was not present at the "secret" meeting. The court also determined that the City had not asserted a frivolous defense in the present case and therefore the Councilmen were not entitled to attorney's fees under section 57.105, Florida Statutes (Supp. 1986).
Councilmen Franklin and Thornber filed a motion for rehearing, alleging that they were surprised by part of the court's ruling. They attached affidavits which alleged that at the time of the "secret" meeting, *235 they were advised by former City Attorney Walter Smith that the meeting was not a Sunshine Law violation. The City responded by filing a motion to strike the motion for rehearing. Councilmen Franklin and Thornber then filed a motion to amend the motion for rehearing, alleging that the Sunshine Law violation was neither pled nor tried by the parties' consent and that, in any event, the trial court had misapplied Tolar. The trial court denied the City's motion to strike and granted the Councilmen's motion to amend the motion for rehearing, but subsequently denied the motion for rehearing. The Councilmen then filed a motion to amend the order denying their motion for rehearing, which the trial court also denied.
The City filed a notice of appeal, from that portion of the final judgment awarding fees to Councilman Grant (Case No. 87-1900). Councilmen Thornber, Franklin and Grant filed a two-part notice of appeal (Case No. 88-99). In Part I, all three Councilmen appealed the trial court's order dismissing Counts II, III and V of their amended complaint. In Part II, Councilmen Thornber and Franklin appealed the final judgment denying them reimbursement of reasonable attorney's fee pursuant to Counts I and IV of their amended complaint.[11]

II.

CASE NO. 87-1900
The City's first point on appeal is that the trial court erred in entering judgment in favor of Councilman Grant because the City did, in fact, defend Grant in his official capacity in the federal lawsuit. This argument fails because the testimony at trial and the pleadings of the federal lawsuit support a finding that the City never provided an attorney to defend Councilman Grant or any of the other Councilmen in the federal lawsuit, in any capacity.
The City's second point on appeal is that Grant did not prevail in the federal lawsuit. Therefore, he was not entitled to attorney's fees under section 111.07. We disagree and affirm the trial court's award of attorney's fees pursuant to section 111.07, based on the authority of Metropolitan Dade County v. Evans, 474 So.2d 392 (Fla. 3d DCA 1985). In general, when a plaintiff takes a voluntary dismissal the defendant is the prevailing party. Stuart Plaza, Ltd. v. Atlantic Coast Dev. Corp. of Martin County, 493 So.2d 1136 (Fla. 4th DCA 1986). In Evans, a police officer and the county were sued in a civil action for damages which arose out of the officer's official duties. The officer was dismissed with prejudice as a result of a settlement negotiated by the county. The trial court found that the officer had "prevailed" and therefore, was entitled to reimbursement of his attorney's fees pursuant to section 111.07, Florida Statutes (1983). The appellate court affirmed, stating that "the dismissal operated to terminate any proceeding against the officer ... a merits determination is not a prerequisite to an award of attorney's fees where the statute provides that they will inure to the party who prevails." 474 So.2d at 393. In the instant case, Grant prevailed because the dismissal with prejudice in the federal lawsuit signalled an end to the litigation against him and under these circumstances a merits determination was not necessary.

III.

CASE NO. 88-99

A.
In Part I of their appeal, the Councilmen assert that the trial court erred in dismissing Counts II, III and V, and finding that they had to be named party defendants in the underlying actions in order to be reimbursed for attorney's fees under section 111.07. They contend that a public official is entitled to reimbursement of reasonable attorney's fees where a municipality refuses to provide counsel to defend the official, regardless of the fact that the official was not sued directly, citing Lomelo v. *236 City of Sunrise, 423 So.2d 974 (Fla. 4th DCA 1983), rev. dism. 431 So.2d 988 (Fla. 1983), and Ferrara v. Caves, et al., 475 So.2d 1295 (Fla. 4th DCA 1985). The City responds that this court should strictly construe section 111.07, therefore, the Councilmen were not entitled to attorney's fees because they were not defendants in the underlying actions referred to in Counts II, III, and V of the amended complaint.
Section 111.07 recognizes the common law doctrine that a public officer is entitled to an attorney at the expense of the public in litigation arising from the performance of his official duties while serving a public purpose. Nuzum v. Valdes, 407 So.2d 277 (Fla. 3d DCA 1981); Ellison v. Reid, 397 So.2d 352 (Fla. 1st DCA 1981); Markham v. State Dept. of Revenue, 298 So.2d 210 (Fla. 1st DCA 1974); Duplig v. City of South Daytona, 195 So.2d 581 (Fla. 1st DCA 1967); Peck v. Spencer, 26 Fla. 23, 7 So. 642 (1890). The purpose of the rule is to avoid a "chilling effect" that a denial of representation might have on a public official in performing his duties properly and diligently. Nuzum, 407 So.2d at 279. Section 111.07 "is designed to prevent municipal officers from having to pay the expenses of litigation incurred in the performance of their official duties." Wright v. Acierno, 437 So.2d 242 (Fla. 5th DCA 1983). While the statute does not mandate a public body to defend an employee, Greer v. Mathews, 409 So.2d 1105 (Fla. 1st DCA 1982), it does require the public body to reimburse the employee for private representation in actions arising out of his official duties. Section 111.07, Florida Statutes (1981).
Statutes authorizing the award of attorney's fees are considered in derogation of common law so as to require strict construction. Encompass Incorporated v. Alford, 444 So.2d 1085 (Fla. 1st DCA 1984). Section 111.07 requires reimbursement of attorney's fees to a prevailing defendant in a civil action arising from a complaint for damages or injuries suffered as a result of the official acts or omissions of public officials or employees. In neither the suit for injunctive relief filed by the Councilmen, nor the grievance petition and circuit court action filed by Ray, were the Councilmen prevailing defendants as required by section 111.07. Therefore, the statute was never activated, and the trial court correctly dismissed Counts II, III and V of the amended complaint.
In Lomelo, the mayor of Sunrise City was indicted for corruption by threat against a public servant, and suspended from office. Because of the suspension the city attorney refused to represent him and the mayor retained private counsel. The mayor was acquitted and the city declined to pay the mayor's attorney's fees. The mayor then filed a declaratory judgment action. The trial court affirmed the city's denial of fees, finding that the city had no duty to pay. The Fourth DCA reversed, stating that:
a municipal corporation or other public body is obligated to furnish or pay fees for counsel to defend a public official subjected to attack either in civil or criminal proceedings where the conduct complained of arises out of or in connection with the performance of his official duties. This obligation arises independent of statute, ordinance or charter. It is not subject to the discretion of the keepers of the city coffers.
423 So.2d at 976.
In Ferrara v. Caves, Ferrara filed recall petitions with the town clerk, seeking the removal of three town commissioners due to their vote on a proposed rent stabilization ordinance. The commissioners filed an action for declaratory and injunctive relief against the deputy town clerk and the town, alleging that the recall petitions were legally insufficient. Ferrara intervened in the action as an indispensable party. Subsequently, the parties entered into a stipulation that the recall petitions were illegal and void and the court entered a final judgment pursuant to the stipulation, finding the petitions legally insufficient and permanently enjoining the town clerk from processing them. The commissioners then filed a motion for attorney's fees against the town, citing Lomelo. The trial court denied the fees and the commissioners appealed. The appellate court reversed, holding *237 that, although the commissioners themselves instituted the declaratory and injunctive action, it "was an effort to defend against charges of misconduct and that in the spirit of Lomelo the town is required in line with case law to pay reasonable attorney's fees... ." 475 So.2d at 1300. The court found that the recall petitions were based upon actions that the commissioners took as public officials. Id.
While we find Lomelo to be a sound embodiment of the common law as recognized in section 111.07, it is inapplicable to the present case. In Lomelo, the parties agreed that no state statute, city ordinance or provision of the city charter authorized or required reimbursement of attorney's fees in that case. 423 So.2d at 975. The probable reason for this stipulation was that section 111.07 only applies to defense of civil actions. Additionally, the mayor in Lomelo was a defendant to a felony indictment, unlike the Councilmen in the present case, who were only named defendants in the federal civil rights action. We also find Ferrara inapplicable. The Ferrara court did not address the propriety of an attorney's fee award under section 111.07. The court simply construed the "spirit" of the common law principles as delineated in Lomelo, to include actions in equity instituted to combat recall petitions which charged the public officials with misconduct in office. Such a construction would be improper under section 111.07, which requires reimbursement of attorney's fees to defendants who prevail in civil actions "arising from a complaint for damages or injury." Therefore, we hold that section 111.07 does not require the City of Fort Walton Beach to reimburse the Councilmen for reasonable attorney's fees and costs expended to initiate the lawsuit to enjoin the recall petitions; nor is the City obligated for any fees or costs incurred by the Councilmen relating to the grievance petition or circuit court action filed by Thomas Ray. Accordingly, we affirm the trial court's order dismissing Counts II, III and V of the amended complaint.

B.
In Part II of their appeal, Councilmen Thornber and Franklin raise two issues for this court's review: (1) Whether the trial court properly tried issues relating to violations of the Sunshine Law; and, if so, (2) whether the trial court correctly applied and interpreted the Sunshine Law in light of Tolar v. School Board of Liberty County, 398 So.2d 427 (Fla. 1981). Because we find that the trial court improperly tried the Sunshine Law issues, we decline to address the merits of the trial court's finding that the Sunshine Law violation constituted "bad faith" action negating an award of attorney's fees pursuant to section 111.07.
The City never pled as an affirmative defense that the Councilmen violated the Sunshine Law and that such violation constituted "bad faith" action negating an award of attorney's fees under section 111.07. The evidence regarding this defense was elicited by Judge Fleet in his inquiries of the Councilmen at trial. Although the Councilmen never objected to the trial judge's questioning, the issue of a Sunshine Law violation as "bad faith" action was never raised by the parties in the pleadings or at trial. Under these circumstances it was improper for Judge Fleet to try the issue. In general, legal issues not raised in pleadings are deemed waived and may be tried only with the express or implied consent of the parties. Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1964); Bilow v. Benoit, 519 So.2d 1114 (Fla. 1st DCA 1988); Fla.R.Civ.P. 1.140(b), (h); 1.190(b).
The City argues that the Sunshine Law issues were tried by consent of the parties. This argument fails for several reasons. Neither party expressly or implicitly raised the "bad faith" issue; the trial judge elicited the evidence from which he made his findings. Even if the evidence was relevant (and admissible) to the issues framed by the parties, it was inappropriate to imply from it a consent to try an issue not pleaded. See Rahaim v. City of Jacksonville, 504 So.2d 1323 (Fla. 1st DCA 1987) (where the trial court was never moved to amend the issues pursuant to rule 1.190(b), *238 nor where it ever ruled that the unpleaded issues were tried by implication, an appellate court is especially precluded from implying a consent to try the unpleaded issues). Additionally, the Councilmen's failure to object to Judge Fleet's questioning regarding the "secret" meeting cannot be construed as implied consent to try Sunshine Law issues, where the questioning may have been relevant to the issues presented in the pleadings, and the Councilmen would have no reason to object. See Bilow, 519 So.2d at 1116. We find that the final judgment denying Councilmen Thornber and Franklin attorney's fees based upon their "bad faith" conduct of violating the Sunshine Law was outside the issues raised in the pleadings or at trial. Accordingly, we reverse. See Freshwater v. Vetter, 511 So.2d 1114 (Fla. 2d DCA 1987) (judgment made upon issue outside pleadings is voidable on appeal).

C.
The Councilmen raise two additional issues in their appeal. First, they challenge the applicability of the standard for determining reasonable attorney's fee as set forth in Fla. Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). We conclude that the Councilmen have waived any challenge to the applicability of Rowe. Not only did they amend their amended complaint in order to comply with Rowe, but their expert witness on attorney's fees, Pat Maney, testified as to the reasonableness of fees under the Rowe standard. Second, the Councilmen appeal the trial court's denial of fees under section 57.105, Florida Statutes (Supp. 1986). Since the City presented justiciable issues of both law and fact in their defense, we affirm the trial court's order denying attorney's fees under section 57.105.

IV.
In summary, we AFFIRM the City's appeal from the final judgment awarding reimbursement of attorney's fees to Councilman Grant, in Case No. 87-1900. In Case No. 88-99, we AFFIRM the trial court's order dismissing Counts II, III and V of the amended complaint. However, we REVERSE the final judgment denying Councilmen Thornber and Franklin recovery under Count IV of their amended complaint, and REMAND for the trial court to enter judgment for them consistent with Grant's award.
SHIVERS, J., concurs.
ZEHMER, J., concurs and dissents with written opinion.
ZEHMER, Judge (concurring and dissenting).
I fully concur in the court's opinion in all respects save one: I dissent from the affirmance of the order in case number 88-99 dismissing count II of the amended complaint.
The trial court denied the prayer for attorney's fees with respect to count II solely on the rationale that appellants were not named defendants in the civil action alleged in that count and thus did not fall within the language of section 111.07, Florida Statutes, entitling them to attorneys fees. I believe this construction of the statute is much too strict, and the decision is not in keeping with the decisional law of this state.
Count II alleged a claim for reimbursement of attorney's fees in connection with a declaratory judgment action filed by appellants that resulted in the court's enjoining enforcement of the invalid and illegal recall petitions addressed to appellants. In Ferrara v. Caves, 475 So.2d 1295 (Fla.4th DCA 1985), the court held that under the common law certain commissioners were entitled to have the city pay their attorney's fees incurred in filing a declaratory judgment action to have the recall petitions filed against them declared invalid and illegal and enjoin the enforcement thereof. There seems to be no question that the common law recognizes a right of governmental officers to reimbursement for legal services performed for such officer to establish or defend the officer's legal right to act in that capacity, whether or not the officer is sued directly as a defendant. Lomelo v. City of Sunrise, 423 So.2d 974 *239 (Fla. 4th DCA), rev. dism. 431 So.2d 988 (Fla. 1983). See also, White v. Crandon, 116 Fla. 162, 156 So. 303 (1934). I can find no valid distinction between the facts in Ferrara and in this case. I conclude, therefore, that the affirmance of the dismissal of count II in this case amounts to a direct conflict with Ferrara.
The majority opinion predicates its holding entirely on a strict construction of section 111.07 as requiring that the officer actually be named as a defendant in the court proceeding in order to be entitled to reimbursement of attorneys fees. It should be noted that the court in Ferrara did not mention section 111.07 in reaching its result, apparently preferring to rest its decision on the common law doctrine. Apparently, the majority in the instant case has determined, without explicitly saying so, that the subject statute has completely displaced the common law doctrine. Moreover, the majority applies a strict construction to the statute upon the stated proposition that the award of attorney's fees is in derogation of the common law, citing Encompass Incorporated v. Alford, 444 So.2d 1085 (Fla. 1st DCA 1984), a case that involved a statutory provision for attorney's fees in a private dispute involving a mechanic's lien. But that case has no precedential value in respect to the question now before us because, as cited above and conceded by the majority opinion, "section 111.07 recognizes the common law doctrine that a public officer is entitled to an attorney at the expense of the public in litigation arising from the performance of his official duties while serving a public purpose." Supra at 236. The fact that the five cases cited by the majority in support of this stated proposition all involved cases in which the officers were named as defendants does not necessarily serve to limit the application of the common law doctrine to named defendants only nor mandate a strict construction of the statute as so modifying and limiting the common law doctrine. I do not believe, therefore, that the statute should be strictly construed to require appellants to be named as a defendant in the court action to recover such fees. All that is necessary to recover such fees is that the officer employ the attorney's services for the purpose of establishing, protecting, and defending the officer's legal right to act in his official capacity in the manner alleged; whether the attorney, in the exercise of his professional judgment, elects to initiate a court action to achieve that purpose or simply to wait until others initiate such action is immaterial in my view, for to so construe the statute would significantly deprive the public officer of the full benefit of his attorney's expertise and the protections that can be afforded by a court action.
Either the majority opinion is in error, or the Fourth District's opinion in Ferrara is in error; both cannot stand as valid, reconcilable law. Since I agree with Ferrara, I would reverse the dismissal of count II.
NOTES
[1] Mead filled the position for a short while until Michael Chesser succeeded him in late July, 1981 and served until August, 1983. James Moore then became the City Attorney and is attorney of record for the City.
[2] Section 286.011, Florida Statutes (1981). The Sunshine Law provides, inter alia, that all public meetings at which official action is to be taken must be open to the public at all times, and that any resolution, rule, or formal action is void unless taken or made at such a meeting.
[3] In pertinent part, section 111.07 authorizes a public body to provide an attorney for the defense of a public official in a civil lawsuit for acts arising out of the official's employment, except in tort actions where the official "acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." If the public body is authorized under the statute to provide an attorney, and it fails to do so, then it shall "reimburse any such defendant who prevails in the action for court costs and reasonable attorney's fees."
[4] On July 8, 1981, Wilson filed an action for a declaratory judgment seeking to void the City Council's resolutions as violative of the Sunshine Law. Wilson v. City of Fort Walton Beach, Case No. 81-1411, Circuit Court, Okaloosa County. Wilson voluntarily dismissed the case on August 27, 1981.
[5] The recall petitions were filed on or about July 14, 1981 with the City Clerk, Charles Evans. On July 23, 1981, Councilmen Thornber and Franklin filed an action in circuit court to enjoin the City Clerk and Supervisor of Elections from processing the recall petitions. Thornber v. Evans, Case No. 81-1532, Circuit Court for Okaloosa County. On August 27, 1981, the trial court entered a permanent injunction finding that the recall petitions were untimely.
[6] On July 14, 1981, Ray appealed his termination on the basis of the alleged misconduct of Mayor Bagley and the City Council. In April 1982, the City Manager rejected the appeal by letter to Ray.
[7] In the civil rights lawsuit, Ray sought compensatory and punitive damages. Ray v. Bagley, et al., Case No. PCA 81-521 (N.D.Fla. 1981). In May 1984, he settled with the City, Mayor Bagley in both capacities, and the Councilmen in their official capacities, receiving reinstatement to his job in return for a voluntary dismissal of the defendants. In July 1984, the Councilmen, in their individual capacities, settled with Ray and were also voluntarily dismissed.
[8] In 1982, Thomas Ray filed an action for a declaratory judgment against City Attorney Michael Chesser, alleging that he was entitled to have his dismissal reviewed by a termination committee impaneled pursuant to the "grievance procedure" outlined in the City Ordinance Code. Ray v. Chesser, Case No. 82-91, Circuit Court for Okaloosa County. The trial court agreed with Ray and the City Attorney appealed. This court reversed. Chesser v. Ray, 425 So.2d 92 (Fla. 1st DCA 1983).
[9] After the initial order dismissing Counts II-VI, the Councilmen amended Count IV to allege that they had requested legal representation from former City Attorney Chesser in the federal lawsuit, who advised them that he had a conflict of interest due to the nature of the accusations made by Thomas Ray and could not represent both the Councilmen and the City, and that the Councilmen should retain private counsel.
[10] The dismissal of Count VI was never challenged.
[11] In their notice of appeal, Part II, the Councilmen mistakenly assert that their cause went to trial on both Counts I and IV. Count I was dismissed by summary judgment and is not challenged on appeal.