560 So.2d 1214 (1990)
Helen CHAVEZ, Appellant/Cross-Appellee,
v.
CITY OF TAMPA, Appellee/Cross-Appellant.
No. 88-01709.
District Court of Appeal of Florida, Second District.
March 16, 1990.
Rehearing Denied May 11, 1990.
Guy M. Burns and Jacqueline W. Hubbard of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, for appellant/cross-appellee.
Charlene V. Edwards, Asst. City Atty., Tampa, for appellee/cross-appellant.
PER CURIAM.
In this case we reverse the trial court's award of attorney's fees and costs incurred by a city official in successfully defending charges of unethical conduct before the Florida Commission on Ethics (the commission) because there is no authority for the award.
The appellant, Helen Chavez, is a restauratrice in Tampa and at all relevant times was a member of the Tampa City Council. In her capacity as businesswoman, she petitioned the city for a 4-COP alcoholic beverage zoning classification permitting both on- and off-premises liquor sales at premises she had recently leased in downtown Tampa. On October 17, 1985, the city council passed a resolution which set her petition for a public hearing on November 21, 1985. Her petition was then taken up for action at the scheduled November 21, 1985, public hearing. In alcoholic beverage zoning matters, the city council first votes *1215 whether to refer the petition to the city's legal department for drafting into ordinance language before returning it to the council for further action. Because her own petition was before the council for this official action, the appellant inquired of the city attorney whether her participation in the voting would constitute a conflict of interest. The city attorney responded that he believed it would be a conflict of interest. Based on his response, the appellant abstained from the vote on the motion to send her own petition to the legal department for the necessary step of drafting into ordinance form. The vote on the motion was tied, 3-3. The effect of this impasse was to deny the motion. Under the council's procedure at this time, the denial of the motion meant that the petition was dead and the appellant could not begin the process anew for at least 12 months.[1] Upon the announcement of the defeat of the motion, the appellant declared that she would change her mind, vote on the motion and take the consequences, conflict or no conflict. Another vote was taken. This time the appellant voted for the motion and her vote broke the tie. Thus, because the motion passed 4-3, her previously moribund petition was revived, moved forward to the next step in the process at the legal department, and subsequently returned to the council for further action.[2]
On December 3, 1985, a political consultant for one of the candidates running for election as mayor of the city of Tampa filed a complaint with the commission alleging that the appellant's tie-breaking vote had violated section 112.3143(3), Florida Statutes (1985).[3] During this period, the appellant was also a candidate for mayor. The commission considered the complaint and found sufficient probable cause to proceed with an investigation of the appellant's alleged violation. The appellant employed counsel and defended the charges before the commission, thus incurring the initial attorney's fees at issue in this appeal. A hearing was held before a hearing officer. At the end of the proceedings, the hearing officer recommended that the complaint against the appellant be dismissed because he concluded that her vote to break the impasse at the November 21 hearing was merely preliminary and procedural and not a vote on the substance of the ordinance itself. Based on that legal conclusion, the hearing officer recommended a finding that the appellant did not violate section 112.3143(3). The commission adopted the hearing officer's recommended report and dismissed *1216 the complaint against the appellant.[4]
Subsequently the appellant requested that the city reimburse her for her legal expenses incurred in defending herself before the commission. The city council declined to do so. Consequently, the appellant filed suit in circuit court seeking reimbursement from the city. The trial court found for the appellant and ordered the city to reimburse her for her attorney's fees and costs but in an amount less than she requested. The court denied her any fees incurred in bringing the suit. The appellant timely filed her notice of appeal and the city cross-appealed.
In her appeal, the appellant contends that the trial court erred in not awarding the full amount of fees she requested for her defense before the commission and further erred in denying her any fees for the circuit court suit. In its cross-appeal, the city contends that the trial court was without authority to award her any fees at all. Because we agree with the city that there was no legal basis for the award of fees, we reverse on the cross-appeal. The appeal, therefore, is moot.

ENTITLEMENT UNDER A STATUTORY THEORY
We begin our analysis of this case by examining section 111.07, Florida Statutes (1985), the statute under which the appellant claims she is entitled to reimbursement of her fees.[5] This section contains precise language that fee awards are authorized "to defend any civil action arising from a complaint for damages or injury suffered." The statute clearly contemplates *1217 a judicial proceeding in a court of law, before a judicial officer, by the plain meaning of "civil action ... for damages or injury." It is true that a sworn complaint initiates an administrative proceeding before the commission, section 112.322(1), Florida Statutes (1985), but that is not at all the same as a complaint for damages which initiates a civil proceeding in a court of law as governed by Florida Rules of Civil Procedure. The commission was established in article II, section 8 of the state constitution and in section 112.320 of the statutes to act as a watchdog to guard against abuses of the trust in which officials and employees of the government hold their office and employment. The function of the commission is to receive and investigate complaints of unethical conduct; after investigating, it reports its findings and recommendations. Section 112.317, dealing with procedure if the commission finds against a respondent, itself contemplates that the commission's own proceedings do not constitute civil actions: Subsection 2 of this section provides that upon a finding of a violation of the Code of Ethics and a recommendation of a civil penalty or restitution penalty, the Attorney General must bring a civil action, i.e., in court, to recover the recommended penalty. Our reasoning is buttressed by our supreme court's finding in Commission on Ethics v. Sullivan, 489 So.2d 10 (Fla. 1986), that the commission is an investigative body and located in the legislative branch of government, not in either the executive or the judicial branches. In sum, since the commission is a part of the legislative branch, proceedings before that investigative body can not be "civil actions." Because that is so, the appellant could not be a prevailing defendant in a civil action for damages so as to activate the statute, even though she was a prevailing respondent before the commission. See City of Fort Walton Beach v. Grant, 544 So.2d 230, 236 (Fla. 1st DCA 1989) (statute not activated for fees incurred: (1) for representation of council members before administrative body in police chief's grievance suit against city; (2) in council members' suit for injunctive relief in recall petition campaign initiated by citizens; nor (3) for monitoring proceedings of police chief's suit for declaratory relief in circuit court against city attorney so that chief's dismissal could be reviewed by a termination committee under the grievance procedure). Accordingly, it was error for the trial court to base an award of fees to appellant on the statute.
We turn now to the appellant's alternative argument. The appellant claims that she is entitled to reimbursement of her fees and costs under a common law theory even if she is not under the statute. We disagree with this contention as well. The First District Court of Appeal has implicitly held that section 111.07 supplants the common law, see id. at 239 (Zehmer, J., concurring and dissenting), and this appears to us to be correct. Several provisions of chapter 111 deal with the payments of judgments, settlements, attorney's fees and costs which can be expended for public officials and employees. See sections 111.065 through 111.072. These sections, when read together with the Code of Ethics in chapter 112, detailing appropriate public official behavior, address the legal principles previously announced in this area of the common law.[6]

ENTITLEMENT UNDER A COMMON LAW THEORY
Even if the statute did not supplant the common law and she was entitled to these costs and fees under case law, we would still reverse because the appellant has failed to carry her burden of proof under this theory as well. The appellant cites Lomelo v. City of Sunrise, 423 So.2d 974, 976 (Fla. 4th DCA 1982), which holds that a city has no discretion to deny reimbursement of fees to a public official in defending either civil or criminal proceedings "where the conduct complained of arises out of or in connection with the *1218 performance of his official duties [and that the] obligation arises independent of statute, ordinance or charter." Under the common law, a city has the duty to protect its interests even when those interests are invaded in the form of an attack on a public officer. Id. at 976. The conditions that must be satisfied for a public official to be compensated for legal defense expenditures are that the lawsuit arise from (1) the performance of the officer's official duties and (2) while serving a public purpose. Id.[7] The appellant is not entitled to fees because she has not fulfilled both prongs of this test. It is true that she was performing her official duties as a council member at the time her vote broke the tie, thus satisfying the first prong. But her vote fails the second prong of the test because it directly advanced her own private pecuniary interests at a critical stage in the rezoning process. The appellant's own actions at the time of the vote confirm this. When the vote was first taken it resulted in a tie, meaning that the petition was dead for at least a year. The appellant then stated: "Whether this is a conflict of interest or not, I'm voting for it." At the bench trial she testified that she was concerned with the economic vitality of downtown Tampa and believed that anything the council could do to encourage business activity there would be an advantage to the city. She further testified that because the council's rules at that time required that a tie vote defeated the motion to refer the petition to the legal department, this was what prompted her vote to break the tie despite the city attorney's advice of a conflict of interest. The final consideration was that her private pecuniary interests would have been thwarted had she not stepped forward in her official capacity to revive the petition and hasten its immediate progress toward the zoning change she desired for her new restaurant.
In the final analysis, we do not doubt that the appellant believed her crucial vote would benefit the downtown section of the city and would, in addition, serve her own obvious personal needs and interests. But, we are not called upon to weigh her competing motives or to decide which, if either, predominated at the time of her vote. Rather, our task is to determine whether her vote served a "public purpose." From our study of the intent and policy of the legislature in the context of ethical behavior, we think "public purpose" equates with "public interest" and excludes any taint of "private interest." The section dealing with voting conflicts itself is helpful to us in defining the term "public purpose." In that section the legislative command to a public official when faced with a voting conflict is clear and unambiguous: If there is some private personal gain involved in the matter at issue, the official may not vote on it. The legislature has not qualified that by forbidding a vote only where the private interest predominates or outweighs the public interest, or even where the private interest is present in equal measure to the public one. The appellant's admission that there was a private interest present underlying her vote is inconsistent with, and cannot equate to, the "public purpose" requirement in the second prong of the common law test. Thus, because she voted for her private interest, there is no support for the award of fees and costs under common law principles. See Ellison v. Reid, 397 So.2d 352 (Fla. 1st DCA 1981) (entitlement to fees found because activity for which ethics commission exonerated property appraiser was for a public purpose in encouraging property appraisers and staffs to become better educated and skilled in their official responsibilities; case distinguishable in that there was no question presented relating to private pecuniary gain).
Finally, we think our decision is in harmony with the overall intent announced by the legislature when it adopted the Code of Ethics:
It is essential to the proper conduct and operation of government that public officials *1219 be independent and impartial and that public office not be used for private gain other than the remuneration provided by law. The public interest, therefore, requires that the law protect against any conflict of interest and establish standards for the conduct of elected officials and government employees in situations where conflicts may exist.
Section 112.311(1), Fla. Stat. (1985). The appellant has not avoided that conflict. Consequently, the court was without authority, either under the statute or the common law, to make the award of fees and costs in this matter.
We reverse on the cross-appeal, affirm the appeal as moot, and remand with instructions to vacate the award of fees to the appellant and enter judgment in favor of the city.
DANAHY, A.C.J., and FRANK and SCHOONOVER, JJ., concur.
NOTES
[1] According to the appellant's testimony at the subsequent bench trial, this procedure has since been changed so that now the denial of such a motion results in the petition remaining dormant until a council member decides to bring it up again for another vote at some later time.
[2] The appellant, at the subsequent December 12, 1985, council hearing, moved for and voted with the council to postpone consideration of the ordinance as drafted and returned by the city's legal department. At the December 19, 1985, city council hearing, consideration of the oncepostponed ordinance was again postponed with the appellant abstaining. She thereafter requested that the city council allow her to change all her previous votes on this issue so that all votes would be recorded as abstentions. The motion to allow the appellant to change her votes was adopted with the appellant then abstaining. Final action on her petition resulted in passage of an ordinance for a 4 COP-R zoning classification allowing sale of alcohol for consumption on the premises only.
[3] This section, part of the Code of Ethics, proscribes voting for private gain in the following language:

112.3143(3) Voting conflicts. 
No county, municipal, or other local public officer shall vote in his official capacity upon any measure which inures to his special private gain or shall knowingly vote in his official capacity upon any measure which inures to the special gain of any principal, other than an agency as defined in s. 112.312(2), by whom he is retained. Such public officer shall, prior to the vote being taken, publicly state to the assembly the nature of his interest in the matter from which he is abstaining from voting and, within 15 days after the vote occurs, disclose the nature of his interest as a public record in a memorandum filed with the person responsible for recording the minutes of the meeting, who shall incorporate the memorandum in the minutes. However, a commissioner of a community redevelopment agency created or designated pursuant to s. 163.356 or s. 163.357 or an officer of an independent special tax district elected on a oneacre, one-vote basis is not prohibited from voting.
[4] The hearing officer concluded that only a vote on the ordinance itself would constitute violation of section 112.3143(3). Thus, the tie-breaking vote on the motion to refer the appellant's petition to the legal department was merely a preliminary or procedural vote not proscribed by the statute. While we do not have the commission's report before us for direct review, suffice it to say we do not agree with such a construction of the statute. Under the hearing officer's construction, the official votes taken by the council are severable. Some  conflicts of interest occurring at a procedural step  are permitted. Others  conflicts occurring at a substantive step  are not. In a case like the one before us, that seems to be a distinction without a difference. The result for the appellant is the same. The failure to obtain a majority vote at any step along the path from the filing of the petition to final passage as an ordinance effectively killed it. In fact, it was the death of her petition by the tie vote, and the resulting detrimental financial consequences to the appellant, that, at least in part, caused her to change her mind. But for her tie-breaking vote on November 21, 1985, no zoning change would have occurred. Her decision to break the impasse was intended and calculated to expedite movement of the matter toward its ultimate successful conclusion. The appellant was faced with an ethical dilemma in deciding whether to break the tie vote. We feel sure it is this very type of dilemma that the legislature addressed when it established the unequivocal standard of behavior expected of public officials when faced with voting in these circumstances. In the words of section 112.3143(3), "no ... local public officer shall vote in his official capacity upon any measure which inures to his special private gain... ." The legislature makes no distinction whether the conflicting vote occurs at the beginning, in the middle, or at the end of the zoning change procedure.

For all that, while we do not agree with the conclusion of the commission on this point, we do not have the commission's report before us for review. Rather, we have for review and disposition the order of the trial court which awarded the appellant reimbursement for her attorney's fees and costs under section 111.07 as a "prevailing respondent" before the commission.
[5] The pertinent statute, section 111.07, provides the following:

Any agency of the state, or any county, municipality, or political subdivision of the state, is authorized to provide an attorney to defend any civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action of any of its officers, employees, or agents for an act or omission arising out of and in the scope of his employment or function, unless, in the case of a tort action, the officer employee, or agent acted in bad faith... . Legal representation of an officer, employee, or agent of a state agency may be provided by the Department of Legal Affairs... . If any agency of the state or any county, municipality, or political subdivision of the state is authorized pursuant to this section to provide an attorney to defend a civil action arising from a complaint for damages or injury suffered as a result of any act or omission of action of any of its officers, employees, or agents and fails to provide such attorney, such agency, county, municipality, or political subdivision shall reimburse any such defendant who prevails in the action for court costs and reasonable attorney's fees.
[6] Cf. Weiner v. American Petrofina Marketing, Inc., 482 So.2d 1362 (Fla. 1986) (in suit for deficiency judgment in face of commercially unreasonable sale, construing provisions of the Uniform Commercial Code, although "general principles of law and equity are applicable to supplement the provisions of the code, they will not prevail when in conflict with code provisions").
[7] The Fourth District did not address the statutory entitlement theory in Lomelo, ostensibly because the parties had stipulated that no statute was applicable. If Lomelo stands for the proposition that the common law provides a supplemental authority for an award of fees and costs, rather than a supplanted authority, we may be in conflict.