H.R. Thornton, Jr. City Attorney City of St. Cloud
QUESTION: 1. Is the City of St. Cloud required to reimburse a former councilman the costs of defending charges before the Commission on Ethics when such charges were ultimately dismissed for no probable cause? 2. In determining whether the city is required to pay such charges, must the city determine that the officer was serving a public purpose at the time of the incident or whether the litigation serves a public purpose? 3. Is the city precluded from providing for its officers as part of their remuneration insurance coverage which would pay all the costs of defending such officers of charges of misconduct, regardless of the outcome of the defense?
SUMMARY: 1. and 2. If the city commission determines that the ethics proceeding arose out of or in connection with the performance of the officer's official duties and services a public purpose, the official is entitled to legal representation at public expense. The determination, however, that both criteria have been met is one which must be made by the governing body of the city. 3. Section 112.08, F.S. (1990 Supp.), authorizes a municipality to provide and pay all or part of the premium for legal expense insurance coverage. However, the determination as to whether the city should provide such coverage to public officials as part of the officials' compensation is one which the city commission must make.
AS TO QUESTION 1 AND 2:
As your first and second questions are interrelated, they will be answered together.
Florida courts have recognized a common law right of public officials to legal representation at public expense to defend themselves against litigation arising from the performance of their official duties while serving a public purpose.[1]
The purpose of this rule is to avoid a "chilling effect" that a denial of representation might have on a public official in performing his duties properly and diligently.[2] As stated by the Fourth District Court of Appeal in Lomelo v. City of Sunrise,[3] such an obligation arises independent of statute, ordinance or charter and "is not subject to the discretion of the keepers of the city coffers."[4]
In AGO 85-51 this office concluded that a municipality was authorized to pay for the defense of a former municipal officer charged with an ethics violation which was subsequently dismissed for no probable cause. Payment of such expenses, however, was conditioned upon the city commission determining that the alleged misconduct arose from the performance of the manager's official duties while he was serving a public purpose. The conclusions reached in the opinion were based upon the common law principles discussed in Ellison v. Reid,[5] which concluded:
 There is no doubt a valuable public purpose is served in protecting the effective operation and maintenance of the administration of a public office. If a public officer is charged with misconduct while performing his official duties and while serving a public purpose, the public has a primary interest in such a controversy and should pay the reasonable and necessary legal fees incurred by the public officer in successfully defending against unfounded allegations of official misconduct.
The courts have stated, however, that this obligation arises only when the conduct complained of arises out of, or in connection with, the performances of the officer's official duties and while serving a public purpose. For example, in Chavez v. City of Tampa,[6]
a city council member filed suit seeking reimbursement from the city for legal expenses she had incurred in successfully defending a charge of unethical conduct before the Florida Commission on Ethics. The charge arose from her vote as a city council member on her petition for an alcoholic beverage zoning classification at business premises she had leased.
While the council member was performing her official duties by voting and thus satisfied the first part of the test, the court determined that the second part of the test was not met since her vote did not serve a "public purpose" but rather directly advanced her own private interests. Thus, the court concluded that under the common law, the city was not required to reimburse the city council member for the legal expenditures she incurred in defending the charges.
In light of the above, this office stated in AGO 90-74 that if
a county determines that the acts alleged in an ethics complaint against a county official arose from the officer's official duties and that a public purpose was being served at the time of such acts, the reimbursement of legal expenses for the officer was permitted. However, the office stated that the determination must be made by the county commission based upon such factual evidence as the governing body may require as such a determination is beyond the authority of this office.
Recently, The Supreme Court of Florida, in Thornber v. city of Fort Walton Beach,[7] recognized the common law principle that "public officials are entitled to legal representation at public expense to defend themselves against litigation arising from the performance of their official duties while serving a public purpose." Citing Chavez v. City of Tampa,supra, the Court held that for public officials to be entitled to representation at public expense, the litigation must:
1) arise out of or in connection with the performance of their official duties and
2) serve a public purpose.[8]
In Thornber, the officers' legal defense against a recall petition arose out the officers' alleged malfeasance in meeting in violation of the Government in the Sunshine Law and in subsequently voting on the issues at a later public meeting. Since the vote taken at the public meeting fell within their official duties, the Court held that the first prong of the test had been met.
The Court found that the second prong was satisfied as well since "[t]he council members' action in defending against the recall petition also served a public purpose."[9] The Court rejected the city's contention that defending against a recall petition only serves the elected officials' personal interests in maintaining their position. While the city has no interest in the outcome of a recall petition, the Court held that the public does have an interest — and the city has a responsibility — to ensure that the recall petition procedures are properly followed.
While previously the courts had generally considered whether the public official was serving a public purpose at the time of the act on which the litigation was based, the Thornber Court considered whether the litigation served a public purpose. As noted above, however, the Court referred to Chavez v. City of Tampa, supra, as authority for the test. Until this matter is further clarified by the Court, this office must presume that the standard or test expressed in Thornber, as the latest expression by The Supreme Court of Florida, governs the payment of legal fees incurred by a public official in successfully defending against an ethics complaint.
Therefore, if the city commission determines that the Ethics Commission proceeding arose out of or in connection with the performance of the officer's official duties and services a public purpose, the official's legal fees incurred in successfully defending against such action must be paid by the city. The determination, however, that both prongs of the test have been met is one which must be made by the governing body of the city and cannot be delegated to this office.[10]
AS TO QUESTION 3:
You note that the court decisions discussing a local government's obligation to pay the attorney fees in defending a public officer for acts arising out of his official duties are dependent upon the outcome of the defense being successful. I am not aware of a decision holding that a municipality is obligated to pay for the defense of a public official who is found guilty of the charges. However, your inquiry does not relate to the city's obligation to pay for such legal fees but whether it may provide its offices, as part of the officers' compensation, legal insurance which would cover the costs incurred in defending such officers against charges of misconduct, regardless of the outcome.
Section 112.08(2)(a), F.S. (1990 Supp.), provides in part:
Every local governmental unit is authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, legal expense, or annuity insurance, or all or any kinds of such insurance, for the officers and employees of the local governmental unit . . . and, to that end, to enter into contracts with insurance companies or professional administrators to provide such insurance. Before entering any contract for insurance, the local government unit shall advertise for competitive bids; and such contract shall be let upon the basis of such bids. However, the local governmental unit may undertake simultaneous negotiations with those companies which have submitted reasonable and timely bids and are found by the local governmental unit to be fully qualified and capable of meeting all servicing requirements. . . . (e.s.)
"Local governmental unit" is expressly defined to include a municipality.[11]
As noted above, I am not aware of any decision which would obligate the city to pay the legal expenses of its officers found guilty of misconduct. However, s. 112.08(2)(a), F.S., authorizes municipalities to provide their officers and employees, as part of their compensation, with legal expense insurance. "Legal expense insurance" is not defined in s. 112.08, F.S. (1990 Supp.), and an examination of the legislation adding the term to s. 112.08, F.S., did not reveal any evidence of legislative intent regarding the type of coverage intended. The term, however, is defined in s. 6423.015(4), F.S., for purposes of the Legal Expense Insurance Act, to mean:
[A] contractual obligation to provide specific legal services, or to reimburse for specific legal expenses, in consideration of a specified payment for an interval of time, regardless of whether the payment is made by the beneficiaries individually or by a third person or reimbursement for, legal services incidental to other insurance coverages.[12]
Therefore, it appears that a municipality may provide such types of legal expense insurance as it deems appropriate to its officers and employees and may pay all or part of the premiums for such insurance.
While a question may be raised as to the public purpose to be served in making such an expenditure of municipal funds, such a determination is one which must be made by the city council and cannot be delegated to this office.
RAB/tjw
[1] See, e.g., Markham v. State, Department of Revenue, 298 So.2d 210 (1 D.C.A. Fla., 1974); Ferrara v. Caves,475 So.2d 1295 (4 D.C.A. Fla., 1985)
[2] Nuzum v. Valdes, 407 So.2d 177, 279 (3 D.C.A. Fla., 1981).
[3] Lomelo v. City of Sunrise, 423 So.2d 974, 976 (4 D.C.A. Fla., 1982), petition for review dismissed,431 So.2d 988 (Fla. 1983).
[4] And see, Ferrara v. Caves, supra, stating that the town was required to pay reasonable attorney fees incurred by the mayor and town commissioners seeking declaratory and injunctive relief against recall petitions.
[5] 397 So.2d 352, 354 (1 D.C.A. Fla., 1981).
[6] 560 So.2d 1214 (2 D.C.A. Fla., 1990).
[7] 568 So.2d 914, 916-917 (Fla. 1990).
[8] 568 So.2d at 917.
[9] Id.
[10] See, e.g., AGO's 86-35 and 90-74.
[11] See, e.g., s. 112.08(1), F.S. (1990 Supp.).
[12] Cf., s. 642.017(5), F.S., stating that the provisions of the Florida Insurance Code and ss. 642.011-642.049, F.S., do not apply to employee welfare benefit plans to the extent that state laws are superseded by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144, provided evidence of exemption from state laws is shown to the Department of Insurance.