946 So.2d 1260 (2007)
Rudy MALOY, Appellant,
v.
BOARD OF COUNTY COMMISSIONERS OF LEON COUNTY, Florida, Appellee.
No. 1D05-4445.
District Court of Appeal of Florida, First District.
January 26, 2007.
*1261 Mark Herron of Messer, Caparello & Self, P.A., Tallahassee, for Appellant.
D. Andrew Byrne of Cooper & Byrne, PLLC, Tallahassee, for Appellee.
PER CURIAM.
Appellant Rudy Maloy challenges the circuit court's entry of summary judgment in favor of Leon County's Board of County Commissioners ("Board"). Contrary to the trial court's ruling, we find the doctrine of sovereign immunity does not bar Maloy's claims. We nevertheless affirm because the underlying Ethics Commission proceeding did not arise out of and in the course of Maloy's employment with the Board while he served a public purpose.

*1262 BACKGROUND

Maloy served as a Leon County Commissioner during all periods relevant to this case. On January 26, 2001, a Leon County citizen, Eugene Danaher, filed an ethics complaint against Maloy with the Florida Commission on Ethics ("Commission"). Danaher accused Maloy of violating the Florida Code of Ethics for Public Officers and Employees. See §§ 112.311.326, Fla. Stat. (2000). Danaher's first allegation concerned improper solicitation and acceptance of gifts in violation of section 112.313(2), Florida Statutes:
Commissioner Maloy solicited and accepted a sexual "favor or service" from his aide Ms. Morris which was based on the understanding that his judgment and official action would be based on the continuance of the sexual "favor or service" from Ms. Morris or her employment would be terminated.
Danaher's second allegation accused Maloy of misusing his public position in violation of section 112.313(6), Florida Statutes:
Commissioner Maloy allegedly corruptly used his official position to obtain a special privilege from his aide in the form of sexual relations.
The complaint also accused Maloy of violating section 112.313(7), Florida Statutes, through an improper conflict with his county commission duties:
Commissioner Maloy allegedly held an explicit [sic] employment relationship with his aide which created a frequently occurring conflict between his public duties and the full and faithful discharge of these duties which he swore under oath to observe.
The Florida Department of Law Enforcement investigated the charges. The Commission found probable cause existed on two of the allegations: (1) soliciting sexually oriented favors from female staff members with the understanding that his official actions or judgment would be influenced; and (2) using his position to engage in sexually or romantically oriented comments, behavior, and/or invitations to female staff members in violation of section 112.313(6). Under the procedures of the Commission, an Administrative Law Judge tried the matter. Maloy prevailed in all respects.
After defeating the ethics complaint, Maloy requested that the Board reimburse the legal fees incurred in defending against Danaher's allegations. Pursuant to county policy 03-02, the Board considered and denied Maloy's request for reimbursement.
Maloy then brought this action in circuit court, seeking relief on three counts: (I) reimbursement under county policy 03-02; (II) reimbursement under the common law; and (III) a declaratory judgment as to a public official's entitlement to have legal fees reimbursed by the public. The trial court found counts II and III barred by the doctrine of sovereign immunity and dismissed them with prejudice. The court then denied Maloy's motion for summary judgment on count I, finding the behavior at the heart of the ethics complaint did not arise out of and in the scope of Maloy's employment with Leon County while in his official capacity and while serving a public purpose. Instead, the trial court found the ethics charges arose from:
private, consensual affairs that Maloy had with two women. These affairs occurred both in and out of the office, occurred while one woman was employed by DOT and later by Leon County, and after she left the employ of both, and while one woman was employed by the county, but outside of the office. Nothing in Maloy's duties for Leon County required him to become involved in such behavior, and it certainly did not *1263 serve the public interest or a public purpose.
The trial court found that the Board properly considered and rejected Maloy's request for reimbursement in accordance with county policy 03-02. Under the trial court's ruling, the county could have reimbursed Maloy if it chose, but was under no obligation to do so. Accordingly, the trial court entered summary judgment in favor of the Board.

ANALYSIS
We review a grant of final summary judgment de novo. See Spears v. Albertson's, Inc., 848 So.2d 1176, 1177 (Fla. 1st DCA 2003). Because the trial court dismissed counts II and III on sovereign immunity grounds, we first consider whether public officials have a common law right to have their legal fees paid by the public and, if so, how the doctrine of sovereign immunity applies to a suit seeking to enforce this right.
Our supreme court has enunciated a common law doctrine affording public officials the right to legal representation at taxpayer expense in defending themselves against litigation arising out of their public duties and while serving a public purpose. See Thornber v. City of Ft. Walton Beach, 568 So.2d 914, 917 (Fla.1990) ("This entitlement to attorney's fees arises independent of statute, ordinance, or charter."); see also Markham v. State, Dep't of Revenue, 298 So.2d 210, 211 (Fla. 1st DCA 1974) ("Public officers are, of course, entitled to a defense at the expense of the public in a law suit arising from the performance of the officer's official duties and while serving a public purpose."); Ellison v. Reid, 397 So.2d 352, 354 (Fla. 1st DCA 1981) ("If a public officer is charged with misconduct while performing his official duties and while serving a public purpose, the public has a primary interest in such a controversy and should pay the reasonable and necessary legal fees incurred by the public officer in successfully defending against unfounded allegations of official misconduct."); Nuzum v. Valdes, 407 So.2d 277, 279 (Fla. 3d DCA 1981) ("This statute [section 111.07, Florida Statutes (1979)] recognizes the common law principle that a public officer is entitled to representation at the public expense in a lawsuit arising from performance of official duties while serving a public purpose."); Lomelo v. City of Sunrise, 423 So.2d 974, 976 (Fla. 4th DCA 1982) ("These cases establish that a municipal corporation or other public body is obligated to furnish or pay fees for counsel to defend a public official subjected to attack either in civil or criminal proceedings where the conduct complained of arises out of or in connection with the performance of his official duties. This obligation arises independent of statute, ordinance or charter. It is not subject to the discretion of the keepers of the city coffers."). This common law right applies to county officials and to ethics proceedings. See Ellison, 397 So.2d at 354 (finding county property appraiser entitled to reimbursement of legal fees incurred in defending against ethics complaint); see also Thornber, 568 So.2d at 918-19 n. 7 (stating public officials entitled to attorney's fees under the common law for the successful defense of misconduct charges before the Commission). Public officials seeking entitlement to reimbursement of attorney's fees must meet a two-prong test: "[T]he litigation must (1) arise out of or in connection with the performance of their official duties and (2) serve a public purpose." Thornber, 568 So.2d at 917.
Before analyzing the Thornber test, we turn to the sovereign immunity defense adopted by the trial court. Florida's counties, as divisions of the state, "enjoy[] the state's sovereign immunity *1264 unless the Legislature by a general law provides otherwise." Arnold v. Shumpert, 217 So.2d 116, 120 (Fla.1968). Only the Legislature has the authority to enact a statute that waives the state's sovereign immunity. Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp., 908 So.2d 459, 471 (Fla.2005). We are not directed to an historical basis rooted in English or American common law, nor to a statute establishing the principle that obligates the state to reimburse public officials for the successful defense of legal actions that arise out of their official duties while serving a public purpose. The courts of this state have, however, repeatedly characterized this common law principle without voicing any sovereign immunity concerns. See, e.g., Thornber, 568 So.2d at 917; Markham, 298 So.2d at 211; Ellison, 397 So.2d at 354; Nuzum, 407 So.2d at 279; Lomelo, 423 So.2d at 976. As this court must observe the confines of our supreme court precedent, see Hoffman v. Jones, 280 So.2d 431, 434 (Fla.1973), we find that sovereign immunity will not bar Mr. Maloy's common law right to have his legal fees reimbursed if accused of "misconduct while performing his official duties and while serving a public purpose." Ellison, 397 So.2d at 354. We must presume the supreme court would not have articulated such a right if the doctrine of sovereign immunity instantaneously nullified it. Accordingly, we cannot affirm the trial court's ruling that sovereign immunity bars counts II and III.
We now consider whether Mr. Maloy's alleged misconduct occurred while performing official duties and while serving a public purpose so as to fall under Thornber. Although the trial court did not analyze this question under counts II and III, the court, in essence, performed the analysis under count I.
All of the cases discussing a public official's right to reimbursement of legal fees arise from an allegation of improper official conductthat is the very nature of an ethics violation. It is not the tenor of the conduct, but rather the context of the allegation upon which the Thornber right is based. For example, in Ellison, a former employee of the Palm Beach County Property Appraisers Office filed a complaint with the Commission on Ethics against the county property appraiser. 397 So.2d at 353. The complaint alleged the property appraiser "improperly gave examination papers to his employees while attending a training program sponsored by the Department of Revenue." Id. The property appraiser successfully defended the charge and sought to include his attorney's fees in the department's annual budget. Id. The Auditor General concluded the suit did not involve a public purpose. Id. The circuit court and this court disagreed, finding the alleged impropriety occurred at a training seminar sponsored by the department and that attendance at such events serves a public purpose because property appraisers improve their skills. Id. at 354. Accordingly, this court affirmed a summary judgment order approving inclusion of the legal fees in the department's budget. Id. One could not argue that helping fellow employees cheat on an exam serves a public purpose. Nevertheless, the accusation in Ellison suggested an ethical violation while the appraiser carried out his public duties and served a public purpose. The specific conduct alleged did not defeat the claim. Instead, we looked to the context of the ethics charges. Under this view, the common law entitled the property appraiser to have his legal fees reimbursed.
In Lomelo, the Fourth District Court of Appeal focused upon the allegations levied against the public official, not simply the underlying conduct of the public official. 423 So.2d at 975-77. There, the state *1265 indicted the city mayor for "corruption by threat against a public servant" for interfering in the arrest of a family acquaintance. Id. at 975. The Fourth District Court of Appeal found:
The indictment alleged that in so doing he violated a criminal statute. Obviously he had no right to threaten the officer or the officer's family. Such conduct would constitute a gross abuse of his power and office. However, he was found innocent of that charge. The remaining facts indicate that he obtained an arrestee's release by virtue of his power as mayor granted in the city charter. Thus he clearly acted in his official capacity and such actions were authorized by the public body.
Id. at 977 (emphasis added).
In Chavez v. City of Tampa, 560 So.2d 1214, 1215 (Fla. 2d DCA 1990), upon which the trial court relied, a mayoral candidate's political consultant filed an ethics complaint against a city council member for voting on an issue in which she had a private, pecuniary interest. Although the court found the public official was performing her public duties under the first prong of the common law test, the court found the city council member did not serve a public purpose when she voted on the issue; instead, according to the court, the city council member voted solely in her own financial interest. Id. at 1218. As a result, the Second District found no entitlement to public reimbursement of the city council member's legal fees. Id.
Under Thornber, a public official is not entitled to taxpayer funded representation simply because an allegation of misconduct arises in the course of his public duties. Rather, the context out of which the alleged misconduct arose must also serve a public purpose. In Ellison, a property appraiser's participation in a training seminar served a public purpose. In Lomelo, a mayor's use of his authorized power to release an arrestee served a public purpose. In Chavez, a city council member's vote, although part of her official duties, served only her private financial interests and not a public purpose.
Mr. Maloy's conduct in the present case did not serve a public purpose. That is, a public official's sexual conduct, whether in the form of illicit sexual harassment or consensual relations between adults, and whether occurring inside or outside of the workplace, does not serve a public function. Although cleared of the alleged misconduct, Maloy's underlying activity did not serve the public interest and the trial court's ruling correctly reflects this conclusion.
The Thornber test applies to each theory of recovery advanced by Maloy. As Maloy failed to satisfy the public purpose prong of the test, we AFFIRM the trial court's order.
BARFIELD, ALLEN, and KAHN, JJ., concur.